**D. U. PULLUM et al., and United States of America, Appellants,**

**v.**

**Austin GREENE et al., Appellees.**

**No. 25389.**

United States Court of Appeals
Fifth Circuit.

June 18, 1968.

who filed a class action against the jury commissioners and other officials, seeking to end discrimination against Negroes in jury service in Terrell County.

Plaintiffs' amended complaint below alleged that (1) Negroes had been systematically excluded from jury service in the county, (2) the jury lists and juries selected did not represent a truly representative cross-section of all qualified persons as constitutionally required and (3) Negroes had been deliberately excluded from serving as jury commissioners. On September 1, 1966, the United States was granted leave to intervene and such intervening complaint alleged systematic exclusion and sought injunctive relief against racial discrimination in jury selection, the continued use of the jury lists then utilized, practices and procedures which had the effect of racial discrimination, and the failure to insure a representative cross-section.

After the suit was filed, on September 12, 13 and 14, the jury commissioners revised the jury lists to include Negroes for the first time. On January 16, 1967, the United States filed a motion to convene a three-judge court and to amend its complaint to challenge the Georgia statute which required the segregated tax digest to be used as the exclusive source of names for prospective jurors. On January 26, the District Court denied the motion on the grounds that the tax digest had sufficient Negroes for the jury commission to secure a fairly representative cross-section. This revised list was in use at the time the hearing was had on the complaint before the District Court on February 20, 21 and 22, 1967.

Before final briefs were submitted, the Georgia Legislature, apparently in response to the United States Supreme Court's decision on January 23, 1967 in Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599, which called into question the constitutional validity of jury lists drawn from segregated Georgia tax digests, amended the Georgia Code to require the jury commissioners to compose immediately a new

Howard Moore, Jr., Atlanta, Ga., Norman C. Amaker, New York City, C. B. King, Albany, Ga., Frank M. Dunbaugh, Atty., Dept. of Justice, Washington, D. C., Jack Greenberg, New York City, for appellants.

Stephen J. Pollak, Asst. Atty. Gen., Floyd M. Buford, U. S. Atty., John Kirby, Michael R. Flicker, Attys., Dept. of Justice, Washington, D. C., for appellant United States.

A. J. Land, Columbus, Ga., W. L. Ferguson, R. R. Jones, Dawson, Ga., Hatcher, Stubbs, Land & Rothschild, Columbus, Ga., for appellees.

Before TUTTLE and DYER, Circuit Judges, and MEHRTENS, District Judge.

TUTTLE, Circuit Judge:

This is an appeal from the District Court's denial of injunctive relief and dismissal of the complaint of Negro residents of Terrell County, Georgia,

jury list which would be a fair cross-section of "upright and intelligent" citizens by consulting the voting lists rather than the segregated tax digest; the new statute further provided that if the jury commissioners determined that the voter lists were not fairly representative, they were to supplement such by personally acquainting themselves with the "upright and intelligent" citizenry of the county, "including upright and intelligent citizens of any significantly identifiable group in the county which may not be fairly represented thereon." Georgia Code Annotated § 59–106.

Written briefs were submitted by both sides on April 24, and on May 11 defendants moved for dismissal on the grounds that the new statute rendered all issues moot and in view of the assertion that on May 3 the jury commissioners had prepared a new jury list allegedly meeting the requirements of the new statute. Attached to the motion was an affidavit of the county clerk stating that a new jury list had been completed and filed "pursuant to the requirements" of the new law. On June 29 the District Court filed an opinion and order denying the plaintiffs' prayer for injunctive relief and dismissing their complaint upon defendants' motion and accompanying affidavit. The District Court interpreted the plaintiffs' complaint as this:

"The main thrust of the plaintiffs' case is the contention that since Georgia Law required the selection of jurors from the tax digest only, and since the jury commissioners follow the provisions of Georgia Law in this respect in selecting the names of jurors in the county, and since the names of Negroes do not appear on the tax digest in proportion to their actual numbers in the county, this amounts to an automatic use of a property qualification by the jury commissioners which necessarily resulted in systematic exclusion of Negroes from the jury lists."

Noting both that the new statute discarded the use of the segregated tax digest and that the jury commissioners had filed a new jury list pursuant to the requirements of the new law, the District Court then observed:

"Obviously, the situation which now exists is radically different from that which existed at the time this complaint was filed and at the time evidentiary hearing was had. Consequently, all of the allegations of the complaint and the testimony both of the plaintiffs and the defendants at the trial of the case and the documentary evidence introduced relating to the matter, have no relevance whatever to the jury lists now in use in Terrell County, compiled pursuant to the new statute. The testimony which the court heard dealt almost entirely with the method of preparing the jury lists and the makeup of some lists prior to the passage of the new statute and do not relate to the preparation of the lists now in use."

In the District Court's view the plaintiffs had sought merely to compel the abandonment of the jury lists prepared from segregated tax digests and the preparation of the new lists from other sources and thus all the relief sought by injunction had been obtained as a result of the passage of the new statute. The District Court declared that none of the allegations of the petition and none of the evidence already taken had any application to the new list; the District Court further asserted a lack of challenge by plaintiffs to this new list and declared that if such challenge were made, racial discrimination would have to be shown by new evidence at a new trial, and unless and until the plaintiffs determined that the new lists did discriminate and so alleged and proved, there was no issue to be determined before the Court, though the District Court pointed out that its dismissal would not preclude plaintiffs from making a new attack.

The Negro plaintiffs assert that the District Court erred in (1) failing to find that defendants had pursued a long-standing pattern and practice of discrim-

ination against Negroes in compiling jury lists in Terrell County, (2) failing to find that the pattern and practice of racial discrimination continued to and through the time of the hearing and defendants' motion to dismiss and (3) refusing to issue an injunction against defendants and in granting their motion to dismiss. The United States cites as error (1) the jury commission's selection procedures and standards operated to discriminate against Negroes prior to 1967 and no showing of change in 1967 was made and therefore the District Court erred in failing to hold that defendants' administration of the selective process did not comply with the constitutional duties and (2) absent clear evidence that defendants had abandoned their discriminatory practices, the District Court abused its discretion in not entering an injunction designed to eliminate present discrimination and like discrimination in the future.

It is clear that the District Court was acting under a misconception as to the nature of plaintiffs' complaint. The plaintiffs and intervening United States were attacking not just the use of the tainted segregated tax digest as a source of jury lists, but the whole pattern and practice of racial discrimination and exclusion of Negroes from jury service of which the tax digest was but one factor and one tool. The evidence showed that the jury commissioners had consistently and consciously disregarded both federal and state statutory and decisional law, and the mere change in state law, whose previous commands had already been consciously ignored, did not remove the central issue of the pattern and practice of racial discrimination. The change of merely one of the sources or tools of the conduct did not demonstrate a change in the conduct itself.

There is no question of the existence of even much more than a prima facie case of racial discrimination in Terrell County in the selection of juries. Negroes were 55.5% of the population according to the United States 1960 census but before September, 1966, after the filing of this law suit, no Negro had ever served on a jury. Compare Carroll County, Mississippi, in United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir., 1959). Previous to the 1967 amendment, Georgia law required the Terrell County jury commission to consult the segregated tax digest as the source for jurors. The evidence showed that in recent years the percentage of Negroes on this tax digest list was approximately 36% of the names but the testimony at the hearing was that the commissioners read the list "from A to Z" but evidently could never find a single qualified Negro. We find the reaction in plaintiffs' brief appropriate:

> "The kindest words that can be said for this explanation is that it is incredible."

This pattern of conduct was in the face of United States Supreme Court decisions applying the "fairly representative cross-section" constitutional *standard and duty* to *Georgia* jury selection procedures in, Avery v. State of Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953) and Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955). Such conduct also demonstrated lack of compliance with Georgia law. See Cobb v. State, 218 Ga. 10, 126 S.E.2d 231 (1962) and Crumb v. State, 205 Ga. 547, 54 S.E.2d 639 (1949). The *total absence* of Negroes from jury lists for decades is compelling evidence of a purposeful discrimination, especially in the face of the inability of the jury commissioners to explain or justify the exclusion. E. g. Whitus v. State of Georgia, supra; Scott v. Walker, 358 F.2d 561, 568 (5th Cir., 1966); Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947); Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1934). With such a long history of racial discrimination, the burden was on the jury commissioners to explain such gross under-representation, and mere assertions of lack of discrimination would be insufficient. Labat v. Bennett, 365 F.2d 698, 719 (5th Cir., 1966);

Reece v. State of Georgia, supra; Whitus v. State of Georgia, supra.

 The 1966 revised jury list, in which Negroes were added for the first time, did not evidence compliance with constitutional commands. In this revision, undertaken after the filing of this suit, the jury commissioners used the same segregated tax digest again and added Negroes to the extent that Negroes constituted some 17.9% of the grand jury list and 21.7% of the traverse list. Statistically the percentage bears little relation to the percentage of Negroes on the tax digest and to the 55.5% Negro population, and when such is combined with both the past pattern of exclusion and the jury commissioners' own testimony of their use of personal and subjective standards and their lack of familiarity with the Negro community, it is apparent that a prima facie case of racial discrimination still existed subsequent to the 1966 revision and it is of serious doubt that the jury commissioners complied with their constitutional duty to familiarize themselves with the community, especially with previously excluded minority groups, Brooks v. Beto, 366 F.2d 1 (5th Cir., 1966), Davis v. Davis, 361 F.2d 770 (5th Cir., 1966), Scott v. Walker, supra, in order to compile a jury list fairly representing a cross-section of the community. Whitus v. State of Georgia, supra; Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); Hill v. State of Texas, 316 U.S. 400 62 S.Ct. 1159, 86 L.Ed. 1559 (1943); Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); Brooks v. Beto, supra.

Thus, it is clear that the District Court was compelled to find both a pattern and practice of racial discrimination and exclusion and the continuance of this pattern and practice through the time of the hearing and up to defendants' motion to dismiss.

 The question then becomes one of what should the District Court have done in the face of such compelled findings. The plaintiffs, contrary to the District Court's view, were not complaining of any specific list of names but rather the pattern and practice of intentional and unlawful conduct undertaken to deprive them and members of their class of their rights to jury service. The evidence at the hearing proved a case of intentional and conscious discrimination by defendants and the District Court erred in finding that such evidence had no relevance because new jury lists had been filed under the new state law. The plaintiffs were not given all the relief prayed for by a mere change in the Georgia Code, as there was no evidence before the District Court of compliance with the new statute other than the mere affidavit by the county clerk that "pursuant to the requirements" of the new law, the jury commissioners had completed and filed with the clerk a new jury list and were no longer using the previous list. The new list was not filed in evidence in support of such assertions, nor was there any showing as to the character of the make-up of this new list. Moreover, the only evidence in the record concerning the voter lists, the new source for jury lists under the amended Georgia law, was that Negroes constituted only 13.1% of this voter list. It is highly likely, therefore, that, faced with this fact in order to achieve a fairly representative cross-section, the jury commissioners would have had to comply with both the federal constitutional commands and the dictates of this new Georgia law that they take the affirmative action of going out and familiarizing themselves with individuals and groups in the community. There was no showing, nor any showing offered, that these efforts had either been made or were fruitful. In view of the long-standing pattern and practice of discrimination, such compliance could not be assumed, especially since the jury commissioners here made no showing that the new list complied with Georgia law or that it contained a non-discriminatory and fairly representative number of Negroes, or that the jury commission-

ers had abandoned their past practices of intentional discrimination.

The issuance of the injunction was plainly required. Since the District Court erred in its conception of the nature of the complaint and the meaning and import of the evidence adduced by plaintiffs at trial and the extent of the injunctive relief sought, the usual weight afforded the District Court's exercise of discretion in granting or denying injunctive relief cannot be granted. It is clear that the District Court erred in its view that the new Georgia law rendered the case moot, for the Supreme Court in United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) has made it certain that voluntary cessation of the allegedly illegal conduct deprives a tribunal of neither the power to hear and determine the case nor the power to grant injunctive relief, since the purpose of an injunction is to prevent future violations and the defendant would otherwise be free to return to his old ways. In *Grant*, supra, the Court did state that a case would be moot, but the defendant had to demonstrate that there was no reasonable expectation that the wrong would be repeated and this burden was a heavy one; mere professions of intention would not suffice.

This Court dealt with this problem in United States v. Atkins, 323 F.2d 733, 739 (5th Cir., 1965), where the assertions of the voter registration board that there would be no return to discriminatory practices was held not to be sufficient to render the case moot. This Court found it an abuse of discretion not to grant the injunction in that case of racial discrimination in voting registration, citing the holding of *Grant*, supra. Atkins pointed out that consideration should be given to (1) the bona fides of the expressed intent to comply, (2) the effectiveness of the discontinuance and (3) the character of the past violations, and there this Court took note of the flagrant violations of constitutional rights and the consistent and extreme

form of discrimination and the evidence indicating the possibility of continued discrimination. This Court found it could not "help but conclude that there is a cognizable danger that there will be some amount of discrimination should the lower court's judgment be affirmed without modification." (At p. 740). See also Mitchell v. Johnson, 250 F.Supp. 117 (M.D.Ala.1966) where the District Court found systematic exclusion from jury service on racial grounds and held that the Negro plaintiffs were entitled, *inter alia*, not only to a prohibitory injunction but also to an injunction requiring immediate affirmative action by jury commissioners—the abandonment of the present jury rolls without any further use, the compiling of jury rolls and the refilling of jury boxes in strict accordance with state law and constitutional principles. See also Anderson v. City of Albany, 321 F.2d 649 (5th Cir., 1963) and State of Alabama v. United States, 304 F.2d 583 (5th Cir., 1962).

It is evident from the record that the District Court required little but mere assertions of compliance with the new Georgia law and this did not meet the heavy burden of proof of demonstrating that there was no reasonable expectation of repetition of wrongs, nor could the record have supported the necessary finding of abandonment. The District Court could not have found the defendants to have met their burden of proof and this was a requirement that had to be met before the District Court itself could properly exercise its discretion. Moreover, as the Supreme Court stated in Louisiana v. United States, 380 U.S. 145 at 154, 85 S.Ct. 817, at 822, 13 L.Ed.2d 709, the District Court "has not merely the power but the *duty* to render a decree which will so far as possible *eliminate the discriminatory effects of the past as well as bar like discrimination in the future*." (Emphasis added). See also the requirement for injunctive relief held necessary in strong language in United States v. Ward, 349 F.2d 795 (5th Cir., 1965).

The relief that must be afforded to the plaintiffs by the District Court is similar to the commands found in Mitchell v. Johnson, supra. Such relief must involve not only the issuance of a prohibitory injunction against present and future violations of the constitutional rights of the plaintiffs and their class to serve on Terrell County juries, but it also must include an injunction requiring immediate affirmative action by the jury commissioners to compile a jury list and refilling of the jury box in strict accordance with the law of Georgia and the federal constitutional mandates. If such has already been done, as alleged, by this new list, an affirmative and documented showing of such compliance must be made forthwith to the District Court.

In addition, in remedying the past wrongs, the jury commissioners must be required to apply the Georgia statutory qualifications for jury service —particularly that requirement that jurors be selected from "upright and intelligent" citizens—fairly and objectively and administer such to all regardless of race, in a non-discriminatory manner. Also, the jury commissioners must be required to place sufficient names on the jury list and in the jury box as to obtain a full cross-section of the county.

We feel that it is appropriate to take note of and incorporate the following portion of the District Court's decision in Mitchell v. Johnson, supra, 250 F.Supp. at 124:

"The defendants in this case will experience no difficulty in complying with the law and no difficulty with this Court if they understand and heed the mandate of the law as pronounced by the United States Court of Appeals for the Fifth Circuit in Collins v. Walker, [5 Cir., 1964, 329 F.2d 100, 105] when that Court, speaking through Circuit Judge Rives, stated:

'A Negro is entitled to the equal protection of the laws, no less and no more. He stands equal before the law, and is viewed by the law as a person, not as a Negro. In the historic language of the elder Mr. Justice Harlan:

"There is no caste here. Our constitution is color-blind, and neither knows nor tolerates classes among citizens. In respect of civil rights, all citizens are equal before the law. The humblest is the peer of the most powerful. The law regards man as man, and takes no account of his surroundings or of his color when his civil rights as guaranteed by the supreme law of the land are involved."

Plessy v. Ferguson, 1896, 163 U.S. 537, 559, 16 S.Ct. 1138, 1146, 41 L.Ed. 256.'

"Failure on the part of the defendants to comply immediately and in good faith with the requirements of this opinion and order will necessitate the appointment by this Court of a master or panel of masters to recompile the jury roll and to empty and refill the Macon County jury box. This action, if it becomes necessary, would be only for the purpose of having the requirements of the law fulfilled. Since the defendants are already charged with this duty—by both the Alabama law and the requirements of the United States Constitution— such action by this Court should not be necessary."

The order denying this injunction and dismissing the case is reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.