**Rev. J. A. SALARY, Appellant,**

v.

**John C. WILSON, Jr., et al., Appellees.**

**Ada Pearl SMITH, Appellant,**

v.

**Honorable Gardner F. GOODWYN, Jr., et al., Appellees.**

**Nos. 25978, 26072.**

United States Court of Appeals Fifth Circuit.

July 31, 1969.

Rehearing Denied and Rehearing En Banc Denied in No. 25978 Sept. 25, 1969.

---

468

No. 25978

Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, Norman C. Amaker, New York City, Oscar W. Adams, Jr., Birmingham, Ala., for appellants.

No. 26072

Oscar W. Adams, Jr., Harvey M. Burg, Adams & Burg, Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, Norman C. Amaker, New York City, for appellant.

MacDonald Gallion, Atty. Gen., Leslie Hall, Asst. Atty. Gen., Montgomery, Ala., Hugh B. Harris, Jr., Asst. Deputy Dist. Atty., Bessemer, Ala., Maurice F. Bishop, Birmingham, Ala., Earl C. Morgan, District Atty., Birmingham, Ala.,

Louis Wilkinson, Deputy District Atty., Birmingham Ala., for appellees.

Before GEWIN and GODBOLD, Circuit Judges, and CHOATE, District Judge.

GODBOLD, Circuit Judge:

In these appeals we consider again challenges asserted on constitutional grounds against jury selection procedures employed in the state circuit court in Jefferson County, Alabama.

These cases are offspring of Billingsley v. Clayton, 359 F.2d 13 (5th Cir.), cert. denied, 385 U.S. 841, 87 S.Ct. 92, 17 L.Ed.2d 74 (1966), in which this court reviewed the jury selection system employed in Jefferson County and in an en banc decision concluded that the plaintiffs therein had failed to prove systematic exclusion of Negroes. Jefferson County constitutes the Tenth Judicial Circuit of Alabama. The Circuit Court is divided into the Birmingham Division, and the Bessemer Division (which covers the area of the county generally described locally as "the Bessemer Cut-off.") Each of the two divisions has a separate jury roll and jury box. The two cases now before us relate only to the Bessemer Division.

Salary v. Wilson is a class action brought by four Negroes alleging that they and other Negroes living in the area have been discriminated against by not being allowed to serve on Bessemer Division juries. They seek an injunction forbidding the use of the current jury roll and box and an order requiring the compilation of a new jury roll.[1] Smith v. Goodwyn is an individual action seeking a declaratory judgment that an indictment for murder against appellant Smith, a Negro, is void because the grand jury which returned it was the product of the allegedly unconstitutional jury selection system in effect in the Bessemer Division. Mrs. Smith also seeks an injunction to prevent appellees from giving any effect to the indictment and from trying her before a petit jury chosen under the present selection system.[2]

The defendants in Salary are the members and the Clerk of the Jury Board and the Clerk of the Circuit Court, Bessemer Division. In Smith the defendants are the same plus the Circuit Judges, and the District Attorney, of the Bessemer Division.

The district court denied relief in Salary on a full record, and dismissed Smith on the ground that the Salary record and decision had disposed of all the issues.

The subject matter of these cases is neither new nor novel. The discriminatory administration of jury selection laws fair on their face achieving a result of exclusion of Negroes from juries has been a violation of the Fourteenth Amendment for almost 100 years. Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1881). Discrimination in the selection of grand juries has been the basis for reversal of state criminal convictions since 1883. Bush v. Kentucky, 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354 (1883).

---

1. Some confusion arises from the use of the terms "jury roll" and "jury box," sometimes employed as synonyms, sometimes as words of differing meaning, and at times in context where the intended meaning cannot be ascertained. Under Jefferson County jury procedures the jury roll is a bound book, containing the names of citizens living in the county and possessing the qualifications for jurors and not exempted by law from jury service. Each name on the roll is typed on a card and placed in the jury box, from which names are drawn of persons to be summoned for jury service. The card of each person who actually serves on a jury is held out of the box (whether for the remainder of the life of that box, or for two years from date of service, or two years from when the next box is constituted, is not clear). Each two years a new jury roll is prepared, the cards remaining in the box are destroyed and a new set of cards covering the names on the new roll are put in the box.

2. The brief of appellants says that Mrs. Smith has been released on bail and that the state has not proceeded further against her.

Nearly twenty years ago the Supreme Court said in Smith v. Texas:

> For racial discrimination to result in the exclusion from jury service of otherwise qualified groups not only violates our Constitution and the laws enacted under it but is at war with our basic concepts of a democratic society and a representative government. * * * The fact that the written words of a state's laws hold out a promise that no such discrimination will be practiced is not enough. The Fourteenth Amendment requires that equal protection to all must be given—not merely promised.

311 U.S. 128, 130, 61 S.Ct. 164, 165, 85 L.Ed. 84, 86 (1940).[3]

*Billingsley* turned on failure of proof by plaintiffs who charged racial discrimination of a systematic nature in the jury selection process. There was no proof of the racial composition of Bessemer Division jury boxes. This court concluded that the record showed a good faith, bona fide effort by the Jury Board to give Negroes an equal, if not a privileged, opportunity to be called for jury service, and that in the absence of proof of the racial composition of the jury boxes the district court was justified in concluding that plaintiffs had failed in their proof. *Billingsley* did not preclude the grant of relief in any future case in which systematic racial discrimination might be established by adequate proof.[4]

*Salary* is the obverse of *Billingsley*. The plaintiffs introduced competent statistical data showing the racial composition of the Bessemer Division jury roll as measured against the racial composition of the community. The evidence reveals that in 1967 in the Bessemer Division there were above the age of twenty 20,238 Negroes and 16,158 whites. Thus, Negroes potentially available for jury service represented approximately 55 percent of the population.[5] The jury roll compiled in 1966–67—the latest one before us on this appeal—contained 12,050 names, of which 1,549 were Negroes. This represents 12.9 percent of the total number of names on the roll.[6] The jury roll in use in 1966 contained 9,546 names of which 675 were Negroes, approximately seven percent.

"[L]itigants are permitted to establish a prima facie case by proof of the objective results of the jury selection procedure." *Billingsley*, 359 F.2d at 17. "[V]ery decided variations in proportions of Negroes and whites on jury

---

**3.** *See also* the discussion in *Billingsley*:

"A just and fair trial by an unbiased, unprejudiced and impartial tribunal is one of the great American constitutional principles. There can be no 'due process' or 'equal protection' unless that principle remains inviolate. * * * There is no expressed constitutional provision as to the class of persons entitled to render jury service, but the law does require that qualified persons not be excluded from jury service on a class basis. * * * It makes no difference whether the exclusion is the result of administrative action or legislative enactment. Both administrative and legislative exclusion are condemned."

359 F.2d at 15–16

**4.** "It is appropriate to state that our conclusion in this case does not preclude the granting of relief in any future proceedings in which racial discrimination of a systematic nature in the jury selection

process is established by adequate proof." Billingsley v. Clayton, *supra*, 359 F.2d at 24.

**5.** These figures were based on population estimates made by the Birmingham Health Department Bureau of Statistics for the four census tracts in the Bessemer Division. The 1960 census figures showed a somewhat smaller percentage: more than 14,199 Negroes over age twenty-one out of a total over twenty-one population of close to 27,733, or approximately 51 percent.

**6.** Appellants point out that their inspection of the jury roll revealed only 10,429 names, rather than the 12,050 testified to by the Clerk of the Jury Board. They assert that the discrepancy probably is caused by their elimination of duplicate names. If their figure is used instead of the one supplied by the Clerk, the percentage of Negroes on the jury roll rises to 14.9 percent. The district court used the figure supplied by the Clerk.

lists from racial proportions in the population, which variations are not explained and are long continued, furnish sufficient evidence of systematic exclusion of Negroes from jury service." United States ex rel. Seals v. Wiman, 304 F.2d 53, 67 (5th Cir. 1962). See also Rabinowitz v. United States, 366 F.2d 34, 58 (5th Cir. 1966).

■ Under these principles the plaintiffs in Salary established a prima facie case of invalid exclusion of Negroes, on a racially discriminatory basis, from consideration for the jury roll, in violation of the Fourteenth Amendment to the constitution of the United States. This put on the members and Clerk of the Jury Board the burden of coming forward with a constitutionally acceptable explanation for the racial disparities shown to exist. Patton v. Mississippi, 332 U.S. 463, 466, 68 S.Ct. 184, 186, 92 L.Ed. 76, 79 (1947); Pullum v. Greene, 396 F.2d 251, 254 (5th Cir. 1968); Labat v. Bennett, 365 F.2d 698, 719 (5th Cir. 1966); Davis v. Davis, 361 F.2d 770, 773 (5th Cir. 1966).

The evidence is that the Board is, in general, following the same procedures and practices in securing names to be placed on the Bessemer Division roll that were followed by them at the time of the Billingsley case. The details of the system are fully set out in that opinion, 359 F.2d at 18–22. Briefly stated, the procedure is to conduct each two years a house-to-house canvass of the urban areas of the county to secure names of people qualified to be jurors. When no one, or no reliable informant, is found at home the canvasser will question a neighbor or leave a post card to be mailed by the residents. In rural areas names are sought from postmasters and storekeepers.[7] No Negro canvassers are used.[8] Most of the canvassers are females. Males go into what are described as the "rough areas" of the community.

In addition letters are sent to some Negroes, primarily ministers seeking the names of other Negroes for inclusion on the jury roll.[9] The city directory and telephone book are used to obtain occupational data and for correct spelling of names. Neither is used as a source of names. Voting lists are not used at all. Once names are secured the Board attempts to eliminate those of persons having criminal records. No evidence was submitted showing that this resulted in elimination of a percentage of Negro names substantially different from the percentage of Negroes in the population. No evidence was offered of disqualification of Negroes, or whites, on educational grounds. No written record of the racial composition of the jury roll is kept anywhere by the Jury Board.

■ Nothing in the system itself tends to justify the sharp variations revealed by the objective statistical data. The only other evidence in the nature of explanation is the failure of Negro "key men" to respond to letters calling for names of suggested jurors [10] and in-

---

7. There are no Negro postmasters in the Bessemer Division. The Clerk of the Board, who is one of the two persons who obtained names from rural areas, could recall only one instance in which he consulted a Negro storekeeper.

8. The explanation given for this is that canvassers were furnished by the county personnel board, which assigned no Negroes. The Clerk of the Jury Board acknowledged that Negroes would in some instances be more successful in obtaining information in Negro neighborhoods. For the two canvassers of which he was in charge the Clerk did not request the personnel board to supply Negro canvas-

sers. Obviously the duties imposed on the Jury Board by the Constitution cannot be altered or limited by personnel board policies.

9. During the 1965 canvass, 63 letters were mailed to Negroes in Jefferson County. Only 4 of these were to Negroes in the Bessemer Division. Ten answers were received, but the Clerk of the Jury Board did not know whether any of the responses were from Bessemer. In 1967, 78 letters were sent, 15 of which were to Negroes who resided in the Bessemer Division.

10. See note 9 supra.

stances of suspicion by Negroes of white canvassers employed by the Jury Board and reluctance of Negroes to cooperate with the canvassers. But the mandates of the constitution cast upon members of jury boards, as judicial administrators, affirmative duties which must be carried out in order to have a constitutionally secure system. Avery v. Georgia, 345 U.S. 559, 561, 73 S.Ct. 891, 892, 97 L.Ed. 1244, 1247 (1953); Cassell v. Texas, 339 U.S. 282, 289, 70 S.Ct. 629, 633, 94 L.Ed. 839, 848 (1950); Hill v. Texas, 316 U.S. 400, 404, 62 S.Ct. 1159, 1161, 86 L.Ed. 1559, 1562 (1942); Pullum v. Greene, *supra*; Mobley v. United States, 379 F.2d 768, 772 (5th Cir. 1967); Brooks v. Beto, 366 F.2d 1 (5th Cir. 1966); Rabinowitz v. United States, *supra*; United States ex rel. Seals v. Wiman, *supra*; Bokulich v. Jury Commission of Greene County, 298 F.Supp. 181 (N.D.Ala.1968). In appraising whether a jury selection procedure comes up to constitutional standards lack of cooperation by the Negro community is relevant in some contexts, along with evidence of the scope and intensity of efforts made to obtain information from the Negro community and elsewhere. But those charged with administering the jury selection machinery may not transfer to the Negro community, or to any other segment of the community, the responsibilities placed by law upon them, nor may they transmute insufficient methods into effectual ones on the basis that Negroes are not sufficiently responsive.

■■ The district court found that the Jury Board acted in good faith in compiling the jury roll and considered that, under *Billingsley*, this was a complete defense. Good faith, or lack of an improper motive, is not a defense to the failure of jury board members to discharge the affirmative constitutional duties cast upon them. Vanleeward v. Rutledge, 369 F.2d 584 (5th Cir. 1966); Davis v. Davis, 361 F.2d 770, 773 (5th Cir. 1966); United States ex rel. Seals v. Wiman, *supra*; Bokulich v. Jury Commission of Greene County, *supra*. See also Brooks v. Beto, *supra*; Rabin-

owitz v. United States, *supra*; Labat v. Bennett, *supra*; Scott v. Walker, 358 F.2d 561 (5th Cir. 1966). Token representation of a group is as much a violation of constitutional rights as complete exclusion. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Smith v. Texas, *supra*; Labat v. Bennett, *supra*; Billingsley, *supra*; Mitchell v. Johnson, 250 F.Supp. 117 (M.D.Ala. 1966).

■ It was not necessary that there be shown conscious or intentional failure of Jury Board members to carry out the duties of their office, or that they consciously and intentionally discriminated or acted from ill will or evil motives, or that they lacked good faith. Smith v. Texas, *supra*; United States ex rel. Seals v. Wiman, *supra*; Vanleeward v. Rutledge, *supra*.

The plaintiffs in *Salary* made out a prima facie case. The defendants failed to present any adequate explanation of the wide racial disparities shown to exist. Good faith alone is not itself a defense. Therefore, judgment was required to be entered for the plaintiffs in *Salary* sustaining their challenge of the jury roll and the jury box.

■ There was no substantial evidence of any failure to comply with constitutional standards in the various procedures by which names on the jury roll are placed on cards, the jury box filled, and names drawn therefrom for grand juries and for petit jury venires. The district court correctly denied relief as to these aspects of the case. The plaintiffs urge that they are entitled to representation on the jury roll and box and on each venire roughly in proportion to the percentage of Negroes in the community. There is no constitutional requirement of proportional representation of the components of the community. Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect proportionate strength of every identifiable group. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Labat v. Bennett, *supra*; Davis v. Davis, *supra*.

The decision in Salary v. Wilson is reversed insofar as it relates to composition of the Bessemer Division jury roll and jury box and remanded. The district court should issue such orders as necessary to require the preparation of a jury roll and box from which Negroes are not unconstitutionally excluded, and to prevent further use of any jury roll and box from which Negroes are unconstitutionally excluded. The district court should require such reports to it as are necessary to achieve this objective, and should retain jurisdiction until the objective is shown to it to be attained.

■ The decision in Smith v. Goodwyn is affirmed. The normal and most appropriate method for appellant Smith to question the validity of the indictment against her and the operation of the jury selection system with regard to both the grand and petit juries is in any criminal prosecution that may be brought against her in the state courts. We do not assume that the state and its officers will not abide by our findings that the jury roll and box are illegally constituted or the orders of the district court requiring that they be reconstituted in compliance with constitutional standards. Bokulich v. Jury Commission of Greene County, 394 U.S. 97, 89 S.Ct. 767, 22 L.Ed.2d 109 (1969); Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951). This is not one of "those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent." Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324, 1329 (1943).[11]

Salary v. Wilson is affirmed in part and reversed and remanded in part for further proceedings not inconsistent with this opinion. Smith v. Goodwyn is affirmed.

11. The district court excluded testimony of a statistical expert relating to the probability of obtaining the percentage of Negroes on the Bessemer jury roll from a population composition such as that of Bessemer by a system of random survey. Such probability calculations are admissible in a jury discrimination case if proffered by a qualified witness with underlying data properly proved. *See* Whitus v. Georgia, 385 U.S. 545, 552 n. 2, 87 S.Ct. 643, 647, 17 L.Ed.2d 599, 605 (1967).

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc. (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.