**Lewis BLACK et al., Plaintiffs-Appellants,**

**United States of America, by John Mitchell, Attorney General, Plaintiff-Intervenor,**

v.

**Clarence CURB et al., Defendants-Appellees.**

**Jack McNEIR et al., Plaintiff-Appellants,**

**United States of America, by John Mitchell, Attorney General, Plaintiff-Intervenor,**

v.

**Carl AGEE et al., Defendants-Appellees.**

**Maloyd E. JONES et al., Plaintiffs-Appellants,**

v.

**Cephus R. HOLLIMAN et al., Defendants-Appellees.**

Nos. 27317, 27662.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1970.

Charles Morgan, Jr., Reber F. Boult, Jr., Atlanta, Ga., Orzell Billingsley, Jr., James K. Baker, Birmingham, Ala., Charles White-Spunner, U. S. Atty., Mobile, Ala., Jerris Leonard, Asst. Atty. Gen., John T. Nixon, David Gregory, Attys., Dept. of Justice, Washington, D. C., Melvin L. Wulf, Eleanor Holmes Norton, New York City, of counsel, for appellants Black and others.

Vernol R. Jansen, Jr., U. S. Atty., David L. Norman, Deputy Asst. Atty. Gen., Carol R. Aronoff, Attorney, Department of Justice, Washington, D. C., for the United States.

MacDonald Gallion, Atty. Gen., Robert P. Bradley, Leslie Hall, Asst. Attys. Gen., Montgomery, Ala., Leon Y. Sadler, County Sol., Camden, Ala., McLean Pitts, Selma, Ala., Richard H. Poellnitz, Greensboro, Ala., L. Y. Sadler, Jr., Wilcox County Atty., Camden, Ala., O. S. Burke, Hale County Atty., Greensboro, Ala., Thomas H. Boggs, Circuit Sol., Linden, Ala., of counsel, for appellees.

James K. Baker, Birmingham, Ala., Reber Boult, Jr., Charles Morgan, Jr., George Dean, Atlanta, Ga., for appellants Jones and others.

Before RIVES, COLEMAN, and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge.

I

*Black v. Curb* and *McNeir v. Agee*

Negro residents of Hale and Wilcox Counties, Alabama, brought these two class actions in the District Court in 1965 against the jury commissioners in each county. The alleged systematic exclusion of Negroes from the county jury rolls, in violation of their right to equal protection and due process under the Fourteenth Amendment. Pursuant to § 902 of the Civil Rights Act of 1964, 42 U.S.C. § 2000h–2, the United States was allowed to intervene as a plaintiff in each case.

On November 30, 1966, following a hearing, the District Court entered a consolidated opinion and order, 261 F. Supp. 542. The Court held the jury rolls and jury boxes of each county to be illegally constituted and ordered that the jury boxes be emptied and refilled according to the provisions of Alabama law. Further, the Court enjoined the jury commissioners from engaging in any act or practice which involves or results in discrimination by reason of race or color in the selection of jurors for jury service. The Court directed in its opinion that the jury boxes be emptied, and the jury rolls abandoned, "without any further use of either", and that the jury boxes be filled with a sufficient number of names "to obtain a full cross section of the county".

On June 14, 1967, the United States filed motions for further relief in each of these cases, alleging the defendants' failure to comply with the District Court's order and the continued systematic exclusion on Negroes and women from county juries. On September 4, 1968, after a second hearing on the merits, the Court denied motions for further relief, finding that "the respective commissions are performing their duties in a bona fide effort to comply with the decree of November 30, 1966". That order is the subject of this appeal.

Alabama law requires that the clerk of the jury commission obtain the name,

address, occupation, and place of business of every citizen of the county between the ages of twenty-one and sixty-five, Title 30, Code of Alabama, § 18. The commission must meet each year to make up a role containing the names of every citizen possessing the statutory qualifications to be a juror and who is not exempted by law from serving, Title 30, § 20. The commission is then required to put the names on individual cards, to be placed in a locked box for the use of the judges of the county, Title 30, § 20.

The Code further requires that the jury commission place on the roll "the names of all citizens of the county who are generally reputed to be honest and intelligent and are esteemed in the community for their integrity, good character, and sound judgment". No person may be selected who is an habitual drunkard, is physically unfit to serve, or has ever been convicted of an offense involving moral turpitude. One who cannot read English is excluded unless he is a freeholder or householder. No person over sixty-five is required to serve unless he is willing to do so, Title 30, § 21.

*Hale County.* According to the 1960 Census, more than 62% of the 7570 adults between the ages of twenty-one and sixty-five are Negro. Before 1965 the greatest number of names of Negroes on any jury roll was seventeen, on the 1962 roll, or 2.6% of the 655 names listed. The 1965 roll, compiled soon after the action against the Hale County commissioners was instituted, included the names of 679 men, of whom 83, or about 12%, were Negroes.

In response to the District Court's order of November 30, 1966, the jury commission added to the roll the names of some Negro men and women of both races. The result was that the 139 Negroes chosen comprised 17.9% of the jury pool, while of those eligible (twenty-one to sixty-five) Negroes made up 62.3%.

Although the jury commissioners of Hale County did not compile the new master list required by the Code, they did supplement the old jury list by means of personal solicitation and the telephone directory. In order to screen persons who were not personally known to the commissioners persons of both races were contacted.

*Wilcox County.* According to the 1960 Census, Negroes comprise about 70% of the population of Wilcox County between the ages of twenty-one and sixty-five. The 1963–1964 jury roll, the first ever to include the name of a Negro, included a total of three Negroes and 455 white persons. The 1966 roll, compiled after the action against the Wilcox County Commissioners was instituted, included approximately 516 men, of whom sixty, or about 12% were Negroes.

Pursuant to the District Court's 1966 order the commission refilled the jury box. In absolute numbers there were 607 white persons on the jury list and 356 Negroes. In terms of percentages Negroes in the eligible age range are 70.3% of the population, but only 36.9% of the jury roll. White persons, on the other hand, are 29.7% of the total population, but 63.1% of the jury roll.

The evidence shows that the Wilcox County jury commission took greater steps to comply with the District Court's order than did the Hale County commission. The old jury roll was discarded and the 1966 registered voters list was used as a source for the new roll. Negro citizens were contacted for recommendations. Further, Earl McNeill, clerk of the Wilcox jury commission, testified that he went into every beat in the county in an effort to obtain names of potential jurors.

Mr. McNeill has apparently never compiled a master list of residents between the ages of twenty-one and sixty-five; the names used by the jury commission in compiling the 1966 roll consisted of the voters list plus names submitted by citizens, the clerk, and the individual commissioners. Mr. McNeill could not

remember how many, if any, of the names recommended by private citizens were rejected. He and Mr. Henderson, another jury commissioner, testified that each person whose name was put on the roll was personally known to the clerk, one of the commissioners or someone they had contacted. If none of the commissioners recognized a particular name, "they either checked up on him and found out about him, or didn't put it in".

In his order denying the motions for additional relief the trial judge states that regard for population percentages was not "controlling or determinative of the commission's good faith efforts to eliminate past exclusion". Appellants maintain that the disparity between the percentage of Negroes in the adult population and their percentage representation on juries establish a prima facie case of continued systematic exclusion of Negroes from the rolls.

■■■ Of course, it is well settled that systematic exclusion of Negroes where Negroes are a sizeable ingredient in the population violates the equal protection clause of the Fourteenth Amendment, Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76. The systematic exclusion rule can still operate when only minimal or token numbers of Negroes are included. As the Court states in Brown v. Allen, 344 U.S. 443, 471, 73 S.Ct. 397, 414, 97 L.Ed. 469:

> "While discriminations worked by consistent exclusion have been rigorously dealt with, [omitting citations] variations in proportions of Negroes and whites on jury lists from racial proportions in the population have not been considered violative of the constitution where they are explained and not long continued. Akins v. Texas, 325 U.S. 398, 403 [65 S.Ct. 1276, 1279, 89 L.Ed. 1692]. Of course, token summoning of Negroes for jury service does not comply with equal protection, Smith v. Texas, 311 U.S. 128, [61 S.Ct. 164, 85 L.Ed. 84]."

■■■ While "tokenism" is constitutionally condemned, its opposite propor-tional representation is not required. In Swain v. Alabama, 380 U.S. 202, 209, 85 S.Ct. 824, 829, 13 L.Ed.2d 759 (1965), it was decided that "neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group". However, the under-representation before the Court in *Swain* was only 10%.

■■■ If a prima facie case of discrimination is made out the state must explain the disparity or establish that the excluded persons are not qualified, Whitus v. Georgia, 385 U.S. 545, 551, 552, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). Otherwise the burden falls to the challengers to show that the commissioners applied different standards or that the excluded group had the requisite qualifications, *Swain,* supra, 380 U.S. at 209, 85 S.Ct. 824.

Appellant says that the jury commissioners have violated the District Court's 1966 order which, in terms, required the commissioners to compile the new jury list in strict accordance with Alabama law. Admittedly the commissioners did not draw up a master list. Since one court has held that the master list should serve as a standard by which efforts to obtain a cross section of the population can be judged, Mitchell v. Johnson, 250 F.Supp. 117, 122 (M.D., Ala., 1966), appellant argues that the jury commissioners' source material was "tainted".

■■■ It would seem that non-compliance with the terms of the court order in drawing up the jury list ought to bring the case within the *Whitus* rationale for a prima facie case. The percentages of Negro representation in this case, if a result of selection by chance from a master list, might not be sufficient to raise an inference of discrimination. However, the method by which the numbers were reached condemns the result.

■■■ The statistical disparities were not satisfactorily explained. The only reason offered was that a number of people had moved from the county in the past few years and that 95% of Wilcox

county's convicted felons are Negroes. Considered by themselves these same explanations were rejected by the Supreme Court in Coleman v. Alabama, 389 U.S. 22, 23, 88 S.Ct. 2, 19 L.Ed.2d 22 (1967) as insufficient to rebut a prima facie case.

■ In the first place, it is clear that declarations that no one was accepted or excluded on the basis of race are clearly insufficient to rebut a prima facie case of discrimination. *Whitus*, supra, 385 U.S. at 551, 87 S.Ct. 643; Norris v. Alabama, 294 U.S. 587, 598, 55 S.Ct. 579, 79 L.Ed. 1074 (1935).

Subsequent to the decision in the District Court, and after the submission of the appeals in this Court, the Supreme Court, January 19, 1970, decided Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed. 2d 549. On the same day the Supreme Court also decided Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed. 2d 567.

*Carter* declined to hold the Alabama jury selection statutes unconstitutional. It insisted, of course, that the statutes be enforced and observed in a fair and impartial manner, free of racial discrimination.

*Turner* held, in the absence of countervailing explanation, that where Negroes constituted only 37% of the citizens on a jury list chosen from a population composed 60% of members of that race corrective action was warranted.

## II

### *Jones v. Holliman*

This case comes from Marengo County, Alabama, situated in the same geographical area as Hale, Greene, and Wilcox. Essentially, it presents substantially the same facts and issues. We, therefore, decide it in the same opinion.

The jury roll in Marengo County clearly fails to meet the standards prescribed in Turner v. Fouche, *supra.*

Quite obviously the appropriate appellate action in these cases is to reverse the judgments of the District Court and remand the cases for further proceedings not inconsistent with the recent decisions of the Supreme Court. The Court will be able to establish the facts as they presently exist. It can act within the teachings of *Carter* and *Turner*, negating the necessity of further appellate action.

Reversed and remanded.