Willie PENN et al., Plaintiffs,

v.

Polly EUBANKS, Individually and as Secretary and member of the Montgomery County Jury Commission and her successors in office, et al., Defendants.

Civ. A. No. 3589–N.

United States District Court,
M. D. Alabama, N. D.

June 6, 1973.

Morris Dees and Joseph J. Levin, Jr. (Southern Poverty Law Center), Montgomery, Ala., for plaintiffs.

John R. Matthews, Jr. (Ball, Ball, Matthews & Lamar), Montgomery, Ala., and M. R. Nachman, Jr., Montgomery, Ala. (Steiner, Crum & Baker), Montgomery, Ala., for defendants.

## MEMORANDUM OPINION

JOHNSON, Chief Judge.

Plaintiffs bring this multiple class action for themselves and others similarly situated, seeking relief against the Montgomery County Jury Commission for alleged race, sex and income discrimination in the selection of potential jurors. Plaintiffs claim that they are fully qualified for jury service, that they have never been called to serve on a jury in Montgomery County and that their names are not included on the jury rolls or in the jury box of Montgomery County.[1]

The parties have stipulated that, according to the 1970 United States Census, there are 83,055 people in Montgomery County between the compulsory jury duty ages of 21 and 65 and that the jury rolls contain the names of some 7,400 persons, of which 6,468 are actually placed on jury cards and included in the jury box from which the names of persons to be called for jury service are randomly drawn. The parties have further stipulated that 16% of those persons on the jury rolls are female and 12% are black, while, according to the 1970 United States Census, 53.9% of those persons eligible by age for jury duty in Montgomery County are female and 30.7% are black. In support of their claim of discrimination on the basis of income, plaintiffs have adduced other evidence which will be outlined in greater detail below. The case was submitted, without formal hearing, upon the foregoing stipulations and other evidence listed in a joint statement of submission. Based on this evidence, plaintiffs contend and defendants deny that the jury system of Montgomery County, Alabama, systematically excludes persons on account of race, sex and income.

---

1. This is the third challenge to the composition of the Montgomery County jury. In the two prior cases, Davis v. Jury Commission of Montgomery County, 261 F.Supp. 591 (D.C.1966) and Malone, et al. v. Richard P. Emmet, et al., 278 F. Supp. 193 (D.C.1967), the challenges were by defendants asking this Court to enjoin pending criminal prosecution for the reason of systematic and intentional exclusion of classes, including blacks, from the Montgomery County jury roll and jury box. In these cases this Court declined to exercise its jurisdiction, stating in the Richard P. Emmet case:

"In actions for declaratory and injunctive relief which have a direct bearing on pending state criminal litigation, Congress has declared what is—at a minimum (see Cameron v. Johnson, D. C., 262 F.Supp. 873)—a strong policy of federal nonintervention in orderly state proceedings. 28 U.S.C. § 2283. Generally, where the only relief sought is declaratory, the exercise of jurisdiction by a district court is completely discretionary. 28 U.S.C. § 2201. Public Service Commission of Utah v. Wycoff Company, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291. See also 6A Moore, Federal Practice 57.08 (2d ed., rev. 1966). With all of these principles in mind, this Court is of the opinion that a federal court should not, in the absence of some *special circumstances*, intervene even by the way of declaratory judgment in state criminal prosecution."

In the case now before the Court, however, the class plaintiffs, as they did in White v. Crook, 251 F.Supp. 401 (D.C. 1966)—a challenge to the Lowndes County, Alabama, jury roll and jury box—seek injunctive relief to remedy alleged violations of the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983. Thus, jurisdiction is clear and there are no questions of comity presented.

 Jury service on the part of citizens of the United States is considered under our law in this country as one of the basic rights and obligations of citizenship. Jury service is a form of participation in the processes of government, a responsibility and a right that should be shared by all citizens, regardless of race or sex or income. Any juror selection plan, therefore, that results in denying blacks, or women or persons of lower income the right to serve on juries in the courts of the State of Alabama is violative of the Fourteenth Amendment.

## I. RACE

 The Fifth Circuit has frequently stated that "figures speak and when they do, courts listen." See, e. g. United States v. Board of Education, 396 F.2d 44, 46 (5th Cir. 1968); United States v. Alabama, 304 F.2d 583, 586 (5th Cir. 1962). In jury selection cases the Fifth Circuit has consistently held that while the party alleging systematic exclusion from jury duty bears the initial burden of establishing a prima facie case of discriminatory jury selection, a prima facie case is established when it is demonstrated both that there is opportunity for racial discrimination in the selection of potential jurors and that a significant disparity exists between the percentage of blacks chosen for jury duty and the percentage of blacks eligible for jury duty in the population from which jurors are drawn. Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); Gibson v. Blair, 467 F.2d 842 (5th Cir. 1972); Preston v. Mandeville, 428 F.2d 1392 (5th Cir. 1970); Black v. Curb, 422 F.2d 656 (5th Cir. 1970); Salary v. Wilson, 415 F.2d 467 (5th Cir. 1969). Neither proof of complete exclusion of blacks, nor proof of specific acts of discrimination is required to establish a prima facie case. Gibson v. Blair, *supra*. Once a prima facie case has been presented, the burden of explaining the disparity falls upon the defendant. Preston v. Mandeville, *supra*; Black v. Curb, *supra*; Salary v. Wilson, supra. Mere declarations

by defendant that race is not a factor in determining who is selected for jury service are insufficient to overcome a prima facie case of discrimination. Black v. Curb, *supra*, 422 F.2d at 660. Neither may those charged with administering the jury selection machinery transfer to the Negro community or any other segment of the community the responsibilities placed by law upon them; nor may they transmute insufficient methods into efficient ones on the basis that Negro "key men" are not sufficiently responsive to requests for names of suggested jurors. Salary v. Wilson, *supra*, 415 F.2d at 472. Finally, while it is not required that the jury commission place the name of each eligible juror on the rolls, the names in the box must reflect a full cross-section of the community. See, e. g., Mobley v. United States, 379 F.2d 768 (5th Cir. 1967); Rabinowitz v. United States, 366 F.2d 34 (5th Cir. 1966).

 Defendants' first line of defense is that plaintiffs have failed to show a significant statistical disparity between the percentage of blacks chosen for jury duty and the percentage of blacks in the population eligible for jury duty. In support of their position, defendants attempt to minimize the statistical disparity by introducing evidence that 21% of the black population over the age of 25 has a zero to fourth grade education. From that evidence, together with a non-expert opinion elicited from a reluctant adverse witness, who on cross examination indicated that he would expect a significant portion of persons with a zero to fourth grade education to be illiterate, defendants would apparently have this Court further assume that a significant portion of those unable to read and write are not freeholders within the meaning of the statutory exception to the literacy requirement, *see* Title 30, Section 21, Code of Alabama (Recomp. 1958, 1971 Cum.Supp.), and conclude that the 30% figure of blacks eligible by age must be reduced to 24% on this basis alone. This Court declines to engage in such rank speculation.

The evidence reflects that the means for selecting potential jurors was highly subjective and thus permitted the opportunity for racial discrimination. The question, then, is whether the disparity between the stipulated percentage of blacks eligible by age for jury service and the stipulated percentage of blacks actually on the jury rolls is sufficient to establish a prima facie case of racial discrimination. In view of the methods used in the selection of potential jurors, this Court concludes that the statistical disparity is sufficient to establish a prima facie case. Consequently, the burden is on defendants to explain the disparity. Neither speculation on the literacy of blacks eligible by age for jury service, nor the claimed reluctance of black leaders to suggest names of potential jurors, nor defendants' declarations of good faith is sufficient to carry that burden. Defendants have offered no other explanation. Thus, plaintiffs' prima facie case of racial discrimination in the selection of potential jurors stands unrebutted. This Court finds, therefore, that blacks have been and continue to be systematically excluded from the jury rolls of Montgomery County.

## II. SEX

While it is well-settled that a state may allow women unconditional exemption from jury service, see Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L. Ed.2d 118 (1961), it is equally well-settled that women cannot be excluded arbitrarily from such service. White v. Crook, 251 F.Supp. 401 (M.D.Ala.1966). Thus, while the disproportion of women to men on a jury list may carry no constitutional significance where a state exempts women from being listed for jury service unless they volunteer, Hoyt v. Florida, *supra*, the same cannot be said where no such exemption exists and where such a disproportion is purely the result of caprice.

Alabama provides women no exemption from being listed for jury service but merely allows any female summoned for jury service to appear before the trial judge and upon good cause shown to be excused from jury duty. Title 30, § 21, Code of Alabama (1971 Cum.Supp.). Plaintiffs have established that a significant disparity exists between the percentage of women eligible by age for jury service in Montgomery County and the percentage of women actually listed on jury rolls. Thus, the burden is on defendants to explain the disparity. The only such attempt comes in defendants' trial brief, where it is suggested that because women may upon good cause shown be excused from jury duty, their representation on the jury rolls in any percentage close to 50 percent would cause disruptions of every trial docket and attendant delays and burdens on the efficient administration of the business of the courts. Defendants contend that jury officials are not required to ignore the "common knowledge" that more women than men will be excused from jury duty and that the Alabama statute contemplates just that.

This explanation suffers two defects: First, other provisions of the Code of Alabama make it clear that men as well as women may in the trial judge's discretion be excused from jury service. *See* Title 30, § 38, Code of Alabama (Recomp.1958). Second, defendants have failed to present any evidence either that significantly more women than men may be expected to be excused from jury service or that inclusion of more women on the jury rolls will cause inordinate disruptions and delay.[2] Once again, plaintiffs' prima facie case stands unrebutted, compelling this Court to conclude that women have been and continue to be systematically and arbitrarily excluded from the jury rolls of Montgomery County.

2. Certainly, no disruption or delay has been experienced in this Court, where women comprise approximately 50% of those selected for jury service.

## III. INCOME

In attempting to establish the existence of systematic exclusion of low income persons from jury duty, plaintiffs have drawn a random sample of potential jurors from the jury rolls, established the mean income of the census tracts in which these potential jurors reside, and compared the mean income of these tracts with the mean income of the county as a whole. Census data reflect that of the jury age population of Montgomery County, approximately 57% come from census tracts with an average income less than the average income for the county as a whole, while approximately 43% live in census tracts with an average income greater than the average income of the county as a whole. The plaintiffs' sample data indicate that approximately 29% of the sample reside in census tracts with an average income less than the average income for the county as a whole, while approximately 71% of the sample live in census tracts with an average income greater than the average of the county.

■ Plaintiffs correctly summarize defendants' defense against the claim of systematic exclusion of low income persons as reducing to the simple statement that mean income of a census tract is an insufficient barometer of the economic status of individuals living within that tract. Plaintiffs' entire rebuttal, however, reduces to the mere recital of a Census Bureau statement that census tracts are originally designed to be relatively homogeneous with respect to population characteristics, economic status and living conditions. The bare *recital* of this statement—particularly in light of the Census Bureau's emphasis on the fact that the tracts were merely *originally* designed to reflect *relative* homogeneity with respect to economic status—is insufficient to establish the average income of a census tract as a sufficient barometer of the economic status of individuals living within that tract. Consequently, while the disparity between the percentage of age eligible persons from census tracts with a lower than average income and the percentage of such persons actually on the jury rolls gives rise to the strong possibility that lower income persons are not adequately represented on Montgomery County's jury rolls, this Court cannot say that the evidence actually before the Court establishes a prima facie case of systematic exclusion of potential jurors with lower than average incomes.

## IV. RELIEF

■ The relief that must be afforded in this case [3] will involve both a prohibitory and a mandatory injunction.[4] This means that there must be a cessation of the use of the Montgomery County jury roll and a complete emptying of the jury box as it now exists within not more than four (4) months from this date. The defendants will be allowed until that time to compile a jury roll and refill the jury box for Montgomery

3. This Court is acutely aware that some defendant board members are State Judges. This Court is also aware that judges are protected from civil liability for judicial actions done under color of office. Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Beard v. Stephens, 372 F.2d 685 (5th Cir. 1967). However, when a judge acts in a non-judicial capacity as a member of a body whose powers are entirely legislative or administrative, he *pro tanto* loses his absolute immunity and is subject to liability as any other state official. McCray v. State of Maryland, 456 F.2d 1, 4 n. 7 (4th Cir. 1972); Lynch v. Johnson, 420 F.2d 818 (6th Cir. 1970).

4. Since the issues and facts are very similar, the injunction that will be entered in this case will be patterned after that granted in White v. Crook, *supra*. The primary difference will be to afford the Montgomery County officials considerably longer to act than the three-judge court allowed in the Lowndes County case. The reason for the longer delay is because the population of Montgomery County is much greater than the population of Lowndes, and this necessitates more time to recompile the jury roll and refill the jury box for Montgomery County.

County in strict accordance with the law of Alabama and the constitutional principles herein set forth. As to the requirement that the Alabama law must be complied with, this Court observed in White v. Crook, *supra*:

. . . This Court recognizes that it does not sit to enforce the law of the State of Alabama, but where the constitutional guaranties as set forth by the Constitution of the United States have been violated to the extent that the defendants have violated them in this case, it is appropriate, in fashioning relief from these violations, for the Court, to the extent possible, to let its decree recognize the validity of the law of the State of Alabama as much as is practicable and consistent with the object of eliminating discrimination in the Lowndes County jury selection system. In remedying the wrong found by this Court to exist concerning the exclusion of Negroes from jury service in Lowndes County, Alabama, the defendants are cautioned that if they apply Alabama's qualifications for jury service—particularly that qualification relating to good character and sound judgment and that qualification concerning the requirement that prospective jurors be able to read English—these qualification requirements must be imposed fairly and objectively and administered to all regardless of race, in a nondiscriminatory manner. This Court recognizes the practical difficulties which will be faced by the jury commission in putting into the jury box the name of every qualified juror on a comprehensive list to be prepared by the jury commission clerk, and further recognizes that the law of Alabama, as stated in Fikes v. State, *supra* [263 Ala. 89, 81 So.2d 303], does not require, literally, that *every* qualified person's name be placed on the rolls or in the box. However, the law does require that the jury commissioners not place so few names in the jury box as not to obtain a full cross-section of the county. In this connection, there should be no less than 1000 names placed in the jury box in Lowndes County, Alabama, at each refilling.

Failure on the part of the defendant jury commissioners and the defendant jury commission clerk to comply immediately and in good faith with the requirements of this opinion and order will necessitate the appointment by this Court of a master or panel of masters to recompile the jury roll and to empty and refill the Lowndes County jury box. This action, if it becomes necessary, would be only for the purpose of having the requirements of the law fulfilled. Since the defendant jury commissioners and the defendant jury commission clerk are already charged with this duty—by both the Alabama law and the requirements of the United States Constitution—such action by this Court should not be necessary.

It should be apparent to all that a full cross-section of Montgomery County will require many times the number the Court mentioned in the Lowndes County case. As for the means of selecting this cross-section, this Court commends for the Jury Commission's consideration the random jury selection plan used in all federal district courts and in many state courts. *See* Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869.

Jurisdiction of this case is expressly reserved. A formal order will be entered in accordance with the foregoing opinion.