### BUSH *v.* KENTUCKY.

1. Where the Circuit Court quashes an indictment, found against the prisoner in a State court, wherefrom the cause was on his petition removed, it has no jurisdiction to proceed against him for the crime against the State wherewith he was charged.
2. Where the highest court of the State had declared to be unconstitutional her statute whereby, because of their race and color, citizens of African descent were excluded from grand and petit juries, and it had further decided that the officer summoning or selecting jurors must disregard race or color, a person of that descent against whom a criminal prosecution was subsequently instituted in the State court has no just ground for declaring, in advance of a trial, that he was denied, or that in the State tribunals he cannot enforce, the equal civil rights secured to him as a citizen by the Constitution or the statutes of the United States. The case was not, therefore, removable to the Circuit Court, nor should the panel of petit jurors be set aside simply on the ground that it consisted wholly of white persons.
3. Where pursuant to such a statute, and before its unconstitutionality was so declared, the grand jurors were selected who found the indictment against the prisoner, a person of that descent, the court of original jurisdiction should, on his motion, set aside the indictment.

ERROR to the Court of Appeals of the State of Kentucky. The case is stated in the opinion of the court.

*Mr. Llewellen P. Tarlton* for the plaintiff in error.

*Mr. William C. P. Breckenridge* and *Mr. Joseph D. Hunt* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This court shares the regret expressed by counsel that the record is in some respects so meagre, and in other respects so

confused, that it is impossible to ascertain what facts were before the inferior State court when it passed certain orders that are commented upon in argument. Some of those orders refer to affidavits and other documents that are not made in any form a part of the record. The difficulties in our way have been, in part, removed by the frank concessions of counsel on both sides, and we cheerfully acknowledge the aid we have received from them in our search through the record for the substantial questions to be determined. We may also add, that our embarrassment has been increased by the consideration that the case is one of no small moment, involving, as it does, on the one hand, the life of a citizen, and on the other, the question whether the judicial tribunals of a State have denied to a prisoner rights guaranteed by the Constitution of the United States. Whether the record before us shows such a denial we will now proceed to inquire.

John Bush, a citizen of African descent, was indicted in 1879 in the Circuit Court for Fayette County, Kentucky, for murder. Upon his first trial the jury, as was stated by counsel, being unable to agree, were discharged. At the next trial he was found guilty, and condemned to suffer death. Upon appeal to the Court of Appeals that judgment was reversed and a new trial ordered for errors committed by the court of original jurisdiction: *first*, in neglecting to instruct as to involuntary manslaughter, as distinguished from murder, the evidence being such as to authorize the jury to find the accused guilty of either offence; *second*, in defining the term " malice; " *third*, in failing properly to instruct whether the death of the deceased was necessarily or probably caused by the wound or ensued from scarlet fever negligently communicated by her physician. *Bush* v. *Commonwealth*, 78 Ky. 268.

Upon the return of the case the accused, as we infer from the record, filed a petition for its removal to the Circuit Court of the United States. That petition, we are informed by counsel, was filed May 24, 1880. It, however, is not in the record. We assume that it was based upon sect. 641 of the Revised Statutes, which authorizes, in general, the removal into such court of any criminal prosecution, commenced in a State court, for any cause whatever, against any person who is denied or can-

not enforce in the judicial tribunals of the State, or in the part of the State where the prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within their jurisdiction. The record, however, does state that copies of all the proceedings in the inferior State court were filed by the accused in the Federal court, before which he was brought upon a writ of *habeas corpus* addressed to the jailer having him in custody.

On the 19th of October, 1880, the accused by his counsel moved in the Federal court that the trial proceed. That motion was denied, and the response by the jailer to the writ of *habeas corpus* was adjudged to be insufficient. The reasons which controlled this action are set forth in the following order : —

"And it appearing to the court from the transcript of the record heretofore filed that the indictment herein was found by a grand jury, summoned under and in accordance with the provisions of section 1, chapter 62, General Statutes of Kentucky, which excludes all other than white citizens from being summoned, or serving thereon, the court is of opinion that said law is a violation of the 14th amendment to the Constitution of the United States, and orders said indictment quashed.

"The marshal of the court is ordered to return the said John Bush to Lexington, Kentucky, as speedily as possible, and there release him. He will, however, before setting him at liberty, notify the Commonwealth's attorney, or, in his absence, the county attorney, or, in his absence, the county judge. This notice shall be in writing, stating the time and place of his release, and he will report his action to this court.

"The defendant excepts to so much of this order as requires his return to Lexington, Kentucky."

The accused was subsequently arrested by the State authorities and a new indictment returned for the same offence. At the term of the court held on the 6th of December, 1880, he tendered an affidavit, stating that "on the fourth day of February, 1879, the grand jury of Fayette County returned into this court an indictment charging him with the same offence, and upon the same statement of facts charged herein; that he, as he had a right to do under the 641st section of the Revised

Statutes of the United States, filed in this court his petition for a transfer of his case to the United States Circuit Court for this district for trial under said indictment ; that the prayer of his petition was granted by said Circuit Court, on which, under said statute, all further proceedings were to cease forever; that the jurisdiction of said United States Circuit Court, to which, under said statute, this cause was removed for the trial of this offence, is superior to and in exclusion of that of this court, and, that court having taken jurisdiction, this court has no jurisdiction to try the same." Copies of the orders of the United States Circuit Court were made part of that affidavit. The court refused its permission to file such affidavit, and to that ruling the accused excepted. The case was then continued to the succeeding February Term, when a special *venire* issued, commanding the sheriff to summon "one hundred and fifty good and lawful jurors from whom to select a jury for the trial of this [Bush's] case." But at that term the prosecution was continued, and on May 16, 1881, the case being again called for trial, the sheriff was ordered to summon "a panel of sev-enty-five additional jurors from whom to select a jury for the trial of this case, and in executing this order he will proceed in his selections without regard to race, color, or previous condi-tion of servitude."

We next find in the record of proceedings in the State court, under date of May 18, 1881, this order : —

" And afterwards, at a term of said court held for said circuit, May 18, 1881 the Commonwealth came, by attorney, and the de-fendant appeared in custody. The defendant moves the court to *set aside the indictment* herein against him, because there was a sub-stantial error committed to his prejudice in the selection and forma-tion of the grand jury which found said indictment, in that the said grand jury was selected and formed in violation of the Constitution of the United States, and therefore is unconstitutional, null, and void, because all citizens of the United States and State of Ken-tucky, and resident in Fayette County, who were not of the class known as white, though eligible for such service, were excluded from the lists from which said grand jury was selected, and thereby the rights, privileges, and immunities of all such citizens so residing, who did not belong to the class known as white, and of the defend-

ant, who is not white, although a citizen of the United States and of Fayette County, Kentucky, were abridged because he and they are not white, and *on account of his and their race and color,* contrary to the Constitution of the United States and the laws in such cases made and provided; which was overruled by the court, and defendant excepts."

The accused then moved to set aside the panel of petit jurors, upon grounds set forth in the following order entered on the same day : —

" The defendant now moves the court *to set aside the panel of petit jurors* selected and summoned to try him herein, because there was a substantial error committed to his prejudice, in that said jurors were not summoned as required by law, in that all citizens of the United States and State of Kentucky, resident in Fayette County, of the African race, of which there are very many eligible and qualified to serve as jurors in Fayette County, and to which race this defendant belongs, were excluded and not summoned by the officers whose duty it was to select and summon said panel to serve on said panel from which the jury to try defendant was to be selected, but only such citizens eligible and qualified which belonged to the class known as white were selected and summoned by such officers.  Defendant filed a *petition for the transfer of this case to the Circuit Court of the United States for Kentucky,* which motion was overruled, and defendant excepts."

The trial proceeded, and the jury returned a verdict of guilty of murder; and, under the power vested in them by the laws of Kentucky, fixed the punishment at death.  A judgment having been rendered accordingly, a motion for a new trial was made and overruled.  Upon appeal to the Court of Appeals the judgment was affirmed.

This statement of facts is quite sufficient to indicate the grounds upon which we rest our determination of such of the questions raised by the assignment of errors as we deem it necessary to consider.

1. The proposition in behalf of the accused to which we will first direct our attention is, that the removal of the prosecution under the first indictment into the Circuit Court of the United States — although the indictment was there quashed — operated to divest the State court of all jurisdiction thereafter,

under any circumstances whatever, to try him for the crime charged.

Such a construction of sect. 641 is wholly inadmissible. The prosecution against Bush could only have been commenced in the judicial tribunals of Kentucky. The crime for which he was indicted, being an offence against the laws of that State, not against those of the United States, was not originally cognizable in the courts of the Union. The removal of the first indictment into the Federal court was competent only because at that time he was denied, by the statutes of Kentucky, rights secured to him by the Constitution and laws of the United States. And when the Federal court in that mode acquired jurisdiction to proceed, as if the prosecution had been there commenced, its authority was limited to the trial of the indictment so removed. That court had, pending the prosecution therein, the same power over the indictment that the State court could have exercised had there been no removal. When, therefore, the Federal court, in the exercise of the discretion which it unquestionably had, quashed the indictment, it was without jurisdiction further to proceed against the defendant for the crime. He could not have been held for indictment by a grand jury in that court, for the obvious reason already suggested that his offence was not one against the United States, but against Kentucky. It was for the authorities of the latter alone to determine whether he should be again indicted, or the prosecution be abandoned.

It follows that there was no error in the order directing the prisoner to be returned to the county in which he was originally indicted. That course was due to the State to the end that its authorities, being duly notified, might take such further action in the premises as they should deem expedient. *Coleman* v. *Tennessee*, 97 U. S. 509 ; *United States* v. *McBratney*, 104 id. 621 ; *United States* v. *Cisna*, 1 McLean, 254.

2. But it is contended, upon behalf of the accused, that his petition for removal, filed after the second indictment was returned, should have been granted, and that the State court could not thereafter rightfully proceed. The petition referred to is doubtless the one described in the order of May 18, 1881. But the record contains no copy of it ; nor did it appear in the

record sent to the Court of Appeals of Kentucky. The same question having been raised in that court, it replied properly that "an inspection of the petition is essential to determine whether it contained allegations sufficient to authorize a transfer, and, in its absence, it must be presumed that it was defective in the allegation of jurisdictional facts, and, therefore, that the court below did right to disregard it."

But there is another and distinct ground upon which that petition, assuming that it was based upon sect. 641, was properly disregarded by the inferior State court. The Court of Appeals of Kentucky, in. *Commonwealth* v. *Johnson*, 78 Ky. 509, decided June 29, 1880 (and hereafter more fully referred to), had declared that the statutes of Kentucky excluding from a grand or a petit jury citizens of African descent because .of their race or color, was unconstitutional, and that thereafter every officer charged with the duty of selecting or summoning jurors must so act without regard to race or color. That decision was binding as well upon the inferior courts of Kentucky as upon all of its officers connected with the administration of justice. After that decision, so long as it was unmodified, it could not have been properly said in advance of a trial that the defendant in a criminal prosecution was denied or could not enforce in the judicial tribunals of Kentucky the rights secured to him by any law providing for the equal civil rights of. citizens of the United States, or of all persons within their jurisdiction. The last indictment was consequently not removable into the Federal court for trial under sect. 641 at any time after the decision in *Commonwealth* v. *Johnson* had been pronounced. This point was distinctly ruled in *Neal* v. *Delaware*, and is substantially covered by the decision in *Virginia* v. *Rives*. If any right, privilege, or immunity of the accused, secured or guaranteed by the Constitution or laws of the United States, had been denied by a refusal of the State court to set aside either that indictment, or the panel of petit jurors, or by any erroneous ruling in the progress of the trial, his remedy would have been through the revisory power of the highest court of the State, and ultimately through that of this court. *Virginia* v. *Rives*, 100 U. S. 313; *Neal* v. *Delaware*, 103 id. 370.

3. It is also assigned for error that the court of original jurisdiction erred in overruling the motion to set aside the panel of petit jurors. We have seen that the ground of this motion was that the petit jurors were not selected and summoned as required by law, in that all citizens of African descent in the county, very many of whom were eligible and qualified to serve as jurors, were excluded from the panel by the officer charged with the duty of selecting and summoning the petit jurors, and that only white citizens were selected and summoned.

It is sufficient for this assignment to say that the motion was properly overruled, for the reason, amongst others, that the grounds upon which it was rested do not clearly and distinctly show that the officers who selected and summoned the petit jurors excluded from the panel qualified citizens of African descent *because of their race or color.* It may have been true that only white citizens were selected and summoned, yet it would not necessarily follow that the officer had violated the law and the special instruction given by the court " to proceed in his selection without regard to race, color, or previous condition of servitude." There was no legal right in the accused to a jury composed in part of his own race. All that he could rightfully demand was a jury from which his race was not excluded *because of their color.* *Virginia* v. *Rives,* 100 U. S. 313. The allegation that colored citizens were excluded, and that only white citizens were selected, was too vague and indefinite to constitute the basis of an inquiry by the court, whether the sheriff had not disobeyed its order by selecting and summoning petit jurors with an intent to discriminate against the race of the accused. This motion was, therefore, properly overruled.

4. But the most important question raised by the assignments of error is that which relates to the overruling of the motion made before the trial to set aside the indictment because found by a grand jury selected and formed upon the basis of excluding therefrom, because of their color, all citizens of the African race resident in Fayette County and eligible for such service.

In several cases heretofore decided in this court we have had

occasion to consider the general question whether the Fourteenth Amendment, and the laws passed by Congress for the enforcement of its provisions, do not prohibit any discrimination, in the selection of grand and petit jurors, against citizens of African descent, because of their race or color.

In *Neal* v. *Delaware*, 103 U. S. 370, we said — commenting upon *Strauder* v. *West Virginia,* *Virginia* v. *Rives,* and *Ex parte Virginia,* 100 id. 303, 313, 339 — that a denial to citizens of African descent, *because of their race*, of the right or privilege accorded to white citizens, of participating as jurors in the administration of justice, is a discrimination against the former inconsistent with the amendment, and within the power of Congress, by appropriate legislation, to prevent; that to compel a colored man to submit to a trial before a jury drawn from a panel from which is excluded, because of their color, every man of his race, however well qualified by education and character to discharge the functions of jurors, is a denial of the equal protection of the laws; and that such exclusion of the black race from juries, because of their color, is not less forbidden by law than would be the exclusion from juries, in the States where the blacks have the majority, of the white race, because of *their* color.

It was also said, in that case, that " the presumption should be indulged, in the first instance, that the State recognizes, as is its plain duty, an amendment of the Federal Constitution, from the time of its adoption, as binding on all of its citizens and every department of its government, and to be enforced within its limits, without reference to any inconsistent provisions in its own Constitution or statutes."

But it was further said: " Had the State, since the adoption of the Fourteenth Amendment, passed any statute in conflict with its provisions, or with the laws enacted for their enforcement, or had its judicial tribunals, by their decisions, repudiated that amendment as a part of the supreme law of the land, or declared the acts passed to enforce its provisions to be inoperative and void, there would have been just ground to hold that there was such a denial, upon its part, of equal civil rights, or such an inability to enforce them in those tribunals, as, under the Constitution and within the meaning

of that section (641, Rev. Stat.), would authorize a removal of the suit or prosecution to the Circuit Court of the United States."

Again, it was declared that a denial upon the part of the officers of the State, charged with duties in that regard, of the right of a colored man ". to a selection of grand and petit jurors without discrimination against his race, because of their race, would be a violation of the Constitution and laws of the United States, which the trial court was bound to redress.    As said by us in *Virginia* v. *Rives*, ' The court will correct the wrong, will quash the indictment or the panel; or, if. not, the error will be corrected in a Superior Court,' and ultimately in this court upon review."

Guided by these principles, we proceed to inquire whether there was anything in the action of the State, by means of legislation or otherwise subsequent to the adoption of the Fourteenth Amendment, that requires us to hold, as matter of law, that in the selection and formation of the grand jury which returned the last indictment there was such a discrimination against the plaintiff in error because of his race, as made it the duty of the court to sustain the motion to set aside that indictment.

By the Revised Statutes of Kentucky, which went into effect on the first day of July, 1852, and were in force when the Fourteenth Amendment became a part of the national Constitution, no one was competent to serve as a petit juror who was not " a free white citizen ; " and none except *citizens* could serve on a grand jury.    2 Rev. Stat. Ky. (Stanton's ed.), pp. 75, 77.    By the same statutes it was provided that all free white persons born in Kentucky or in any other State of the Union, residing in that State, all free white persons naturalized under the laws of the United States, residing there, and all persons who have obtained a right to citizenship under former laws, and every child, wherever born, whose father or mother was or shall be a citizen of Kentucky at the birth of such child, shall be deemed citizens of that State.    1 id. 238.    So that, by the law of Kentucky at the adoption of the Fourteenth Amendment no citizen of the African race was competent to serve as a grand juror.

The Revised Statutes of Kentucky were superseded (certainly as to the selection of grand and petit jurors) by the General Statutes, which were formally enacted as the law of the State, and went into effect on the first day of December, 1873. These — whilst declaring, in conformity with the Fourteenth Amendment, all persons born or naturalized in the United States and subject to the jurisdiction thereof if residing in Kentucky to be citizens of that State — re-enacted the disqualification of colored persons as petit jurors, and also provided that "no person shall be qualified as a grand juryman unless he be a white citizen." Gen. Stat. Ky. 570. And in the new Criminal Code of Practice of Kentucky, which went into effect Jan. 1, 1877, it is expressly provided that "the selecting, summoning, and impanelling of a grand jury shall be as prescribed in the General Statutes." Sect. 101.

It thus appears that the legislature of Kentucky, after the adoption of the Fourteenth Amendment and notwithstanding the explicit declaration therein that "no State shall deny to any person within its jurisdiction the equal protection of the laws," twice expressly enacted that no citizen of the African race should be competent to serve either as a grand or petit juror. And these re-enactments of the prior laws excluding citizens of that race from service on grand or petit juries remained unchanged by legislation in that Commonwealth until the passage of the act approved Jan. 26, 1882, whereby the word "white" was stricken out of the sections of the General Statutes prescribing the qualifications of grand and petit jurymen.

In this connection it is necessary to recur to the case of *Commonwealth* v. *Johnson*, determined, as we have seen, in the Court of Appeals of Kentucky on the 29th of June, 1880. In that case it was held, upon the authority of *Strauder* v. *West Virginia*, 100 U. S. 303 (decided on the first day of March, 1880), that so much of the statute of Kentucky "as excludes all persons other than white men from service on juries is unconstitutional, and that no person can be lawfully excluded from any jury on account of his race or color." The learned court then proceeded: "This question has not been heretofore passed on by this court, and as the duty of select-

ing and summoning juries is devolved upon merely ministerial officers, we ought to assume that, in performing their duties, they obeyed the statute as enacted by the legislature, and that they excluded colored persons from the jury because the statute declares them to be incompetent, and, consequently, that the appellee was deprived by the statute of a right which the Supreme Court holds is secured to him by the Constitution.

" But the word ' white,' as found in our jury laws, being *now* declared to be no part of that law, it will be incumbent on all officers charged with the duty of selecting or summoning jurors, to make their selections without regard to race or color; and when juries are *hereafter* selected and summoned, it ought to be presumed that the officers did their duty, and ignored the statute so far as it is herein held to be unconstitutional, and that they have not excluded any person from the jury on account of his race or color." 78 Ky. 509.

The indictment upon which the plaintiff in error has been tried, convicted, and sentenced to suffer death was returned by a grand jury selected by jury commissioners who were appointed by the State court of original jurisdiction at its May Term, 1880. It was therefore found by grand jurors who were selected prior to the decision in *Commonwealth v. Johnson.* The names of the grand jurors so selected were reported to the court at that term as the grand jury for the succeeding term, — at which the indictment upon which Bush was tried was returned. So that the grand jurors who found the indictment were *selected* when statutes of Kentucky, re-enacted after the adoption of the Fourteenth Amendment, expressly restricted jury commissioners in their selection of grand jurors to white citizens. Further, they were selected at a time when, according to the rule announced by the highest court of Kentucky, it should be assumed that the officers charged with the duty of selecting grand jurors obeyed the local statute by excluding from the list, because of their race, all citizens of African descent.

These considerations bring the case within the principles announced in *Neal* v. *Delaware.* The presumption that the State recognized the Fourteenth Amendment from the date of its adoption to be binding on all its citizens and every depart-

ment of its government, and to be enforced within its limits without reference to any inconsistent provisions in its own Constitution and laws, is overthrown by the fact that twice, after the ratification of that amendment, the State enacted laws which in terms excluded citizens of African descent, because of their race, from service on grand and petit juries. It was not until after the grand jurors who returned the indictment against Bush had been *selected* that the highest court of Kentucky, speaking with authority for all the judicial tribunals of that Commonwealth, declared that the local statutes, in so far as they excluded colored citizens from grand and petit juries because of their race, were in conflict with the national Constitution.

But upon this branch of the case the argument by counsel for the Commonwealth of Kentucky is, that the record does not show, by a bill of exceptions or otherwise, that any proof whatever was offered in support of the motion to set aside the indictment; and, consequently, that in disposing of that motion, as presenting simply a question of law arising upon the face of the local statutes, the presumption is that the jury commissioners in their selection, at May Term, 1880, of the Fayette Circuit Court, of grand jurors for the succeeding term, respected the decision in *Strauder* v. *West Virginia* and similar cases, and, therefore, disregarded the statutes of Kentucky. The force of this position would be greatly strengthened if the record furnished any evidence that the court gave to those commissioners such instructions as were given to the sheriff in May, 1881, when that officer was required to select and summon petit jurors for the trial of Bush. We are of opinion that the rule announced by the Court of Appeals in *Commonwealth* v. *Johnson* is consistent with sound reason and public policy; and, in conformity therewith, — in the absence of any evidence that the selection of grand jurors, in May, 1880, was in fact made without discrimination against colored citizens, because of their race, — it should be assumed that the jury commissioners then appointed followed the statutes of Kentucky so far as they restricted the selections of grand jurors to citizens of the white race.

For these reasons it is adjudged that the court of original

jurisdiction erred in overruling the motion to set aside the indictment, and, consequently, that the Court of Appeals of Kentucky erred in affirming its judgment.

The judgment of the Court of Appeals of Kentucky is reversed, and the cause remanded to that court, to be thence remanded to the Fayette Circuit Court, with directions to set aside the indictment.

MR. JUSTICE FIELD adheres to the views expressed by him in his dissenting opinions in *Ex parte Virginia*, 100 U. S. 339, 349, and in *Neal* v. *Delaware*, 103 id. 370, 398; and, therefore, dissents from the judgment in this case.

MR. CHIEF JUSTICE WAITE, with whom concurred MR. JUSTICE GRAY, dissenting.

I am unable to concur in this judgment. In my opinion it is not to be presumed that the courts or the officers of Kentucky neglected or refused to follow the rulings in *Strauder* v. *West Virginia* after the judgment in that case was pronounced by this court. The Court of Appeals promptly recognized the authority of that case, and, in the absence of any proof to the contrary, it seems to me we must assume that the inferior courts also did.