Samuel GIBSON, III, Petitioner,

v.

Walter B. ZANT, Superintendent, Georgia Diagnostic and Classification Center, Respondent.

Civ. A. No. 80–95–MAC.

United States District Court,
M. D. Georgia,
Macon Division.

Sept. 24, 1982.

Millard C. Farmer, Atlanta, Ga., for petitioner.

Victoria H. Soto, Atlanta, Ga., for respondent.

## ORDER

OWENS, Chief Judge.

Since 1867—some one-hundred fifteen years—on account of laws passed by Congress, 28 U.S.C. § 2241, *et seq.,* it has been the responsibility of United States District Courts to consider and decide petitions for writs of habeas corpus filed by state prisoners alleging that they are in custody because of having been tried and convicted in violation of their rights derived from the Constitution or laws of the United States. Some call the performance of this terrible duty "interference by federal courts" in the affairs of the States. Those who are better informed recognize that deciding state habeas cases is just one of many distasteful tasks that Congress has assigned to state citizens serving as United States District Judges and that must be performed by United States District Judges regardless of their personal likes or dislikes.

In considering rights derived from the Constitution of the United States this United States District Court is bound by the Constitution itself and the decisions of the Supreme Court of the United States and United States courts of appeals interpreting and applying those constitutional provisions. The Fourteenth Amendment to the Constitution of the United States requires the states of these United States to afford United States constitutional rights to all persons tried on criminal charges in a state court. State trial and appellate judges are therefore also bound by the Constitution of the United States and the decisions of the Supreme Court of the United States and United States courts of appeals interpreting and applying constitutional provisions. Those decisions are published and readily available to judges of the courts of this State as well as to judges of this court in law books found in each court's library.

In 1975 Samuel Gibson raped and murdered a young mother in Jones County, Georgia. Soon thereafter Samuel Gibson confessed to the terrible crime he had committed, and the question of whether or not Samuel Gibson should be indicted for rape

and murder was submitted to a grand jury of the Jones County Superior Court. Following indictment the Superior Court of Jones County appointed an experienced criminal lawyer to represent Samuel Gibson. Pursuant to his Sixth Amendment duty to fully and effectively represent Samuel Gibson, that lawyer challenged the constitutionality of the superior court's jury list from which the grand jury that indicted Samuel Gibson and the trial jury that would determine his guilt and sentence were drawn.

At a hearing held on May 1, 1975, by stipulation[1] of fact the state trial judge was presented the following information:

(1) The 1970 census which shows that the total population of Jones County by sex consists of 48.78% men and 51.22% women, and by race consists of 61.41% white and 38.59% black persons.

(2) The grand jury list from which the indicting grand jury was drawn and which includes the names of 412 persons, exclusive of five eliminated for valid reasons; an analysis of those 412 persons by sex and race compared to the census shows:

| Total | Men | Women | White | Black |
|---|---|---|---|---|
| 412 | 357 | 55 | 339 | 73 |
| % of Total | 86.70% | 13.30% | 82.30% | 17.70% |
| Census | 48.78% | 51.22% | 61.41% | 38.59% |
| Disparity | +37.92% | −37.92% | +20.89% | −20.89% |

(3) The trial or traverse jury list from which the trial jury panel was drawn and which includes the names of 1,504 persons, exclusive of twenty eliminated for valid reasons; an analysis of those 1,504 persons (less unknown persons) by sex and race shows:

| Total Known | Men | Women | White | Black |
|---|---|---|---|---|
| 1,475 | 1,186 | 289 | 1,207 | 268 |
| % of Total | 80.40% | 19.60% | 81.80% | 18.20% |
| Census | 48.78% | 51.22% | 61.41% | 38.59% |
| Disparity | +31.62% | −31.62% | +20.39% | −20.39% |

Samuel Gibson's attorney contended that these jury list, census and percentage disparity facts established a prima facie case of unconstitutional grand and petit (trial) jury composition and directed the trial court's attention to State of Georgia appellate court decisions and United States Supreme Court and Court of Appeals' decisions supporting his contentions. The trial judge stated, "I believe the burden would shift to the State . . .," and directed the prosecution to proceed to present evidence. (Tr. p. 11).

The jury commissioners—three white men, one white woman and two black men—were called as witnesses. Every commissioner testified that some citizens verbally[2] asked to be excluded and likewise some asked to be included on the jury lists; those requests were generally honored. The commissioners, with some few exceptions,[3] considered only those on the regis-

---

1. The stipulation or agreement of fact included the proviso that the identity of persons on the jury list by race and sex was accurate ± 5%.

2. Until April 18, 1975, and the legislative repeal of Code § 59–124, women desiring not to serve upon juries could notify the jury commissioners *in writing* and thus be left off the list. The commissioners did not claim that the disparities herein demonstrated were caused by elimi-

nating women who made written requests. No such written requests were introduced in evidence.

3. Petitioner's counsel suggested that only 19 of 1,504 trial jury names were of persons not on the registered voters list. (Tr. p. 31). The witnesses did not dispute the suggestion.

tered voters' list. The commissioners acknowledged knowing persons not on the registered voters' list and not on either jury list who would be good jurors, and acknowledged knowing persons on the registered voters' list who would be qualified to serve as jurors but were not included on either the grand or trial jury list. (Note Tr. at p. 38.) In preparing the lists the jury commissioners met jointly, went over every name on the registered voters' list, relied upon the knowledge of one or more commissioners as to each registered voter, and either included or excluded each registered voter from the jury lists. Each commissioner stated that neither the sex nor the race of each person was considered.

The trial judge then ruled:

"THE COURT: Well, I hold that under the evidence in this case, that it has been shown that there, that the, both the Grand and the Traverse Jury is a representative cross-section of the citizens of Jones County and that it has been shown by the evidence beyond a reasonable doubt and that these Jury Commissioners did go out into the community and diligently seek to formulate an Array of Jurors which does represent a representative cross-section of this community. And that the Jury Commissioners in Jones County would compare favorably or better with any Jury Commissioners anywhere in this Country. I therefore overrule the motion to Challenge to the Array of Grand Jurors as well as to the Challenge to the Array of the Traverse Jurors. Motion to quash the indictment is denied."

Counsel for Samuel Gibson then suggested that because of the similarity of the percentage disparities of blacks and women on the subject jury lists to those found in already decided cases in which jury lists were found to be unconstitutionally composed and "for the public's interest to save the expense of going through an entire Jury Selection and then an entire trial with the possibility that a reversal might come about because of the disproportionate per-

centages here," that an appeal be authorized on the jury composition issue before a trial was held. The suggestion was declined. The trial was held before a trial jury selected from names drawn from the jury lists under attack; it lasted from around 9:00 a. m. until around 2:30 a. m. the next day—some 17½ hours. Samuel Gibson was found guilty and sentenced to die.

On appeal the Supreme Court of Georgia was urged to find these jury lists to have been unconstitutionally composed. In its opinion the court cited United States Supreme Court opinions finding similar jury lists to have been unconstitutionally composed, but nevertheless concluded that "the jury being composed of a representative cross-section of the population of Jones County, the trial court did not err in overruling the appellant's [Samuel Gibson's] challenge to the array [the lists] of the grand and traverse juries." Two Justices dissented. One dissenter stated:

"I dissent to the majority opinion primarily because of the jury composition issue. A review of the transcript and record leads me to the opinion that the requirements of *Alexander v. Louisiana,* 405 U.S. 625 [92 S.Ct. 1221, 31 L.Ed.2d 536] (1972), and *Turner v. Fouche,* 396 U.S. 346, 361 [90 S.Ct. 532, 540, 24 L.Ed.2d 567] (1970) have not been satisfied in this case." 236 Ga. 874, 881 and 883; 226 S.E.2d 63, 68 and 69 (1976).

As is certain to happen in death sentence criminal cases, Samuel Gibson's lawyers pursued every avenue of state court direct and habeas appeal and then came into this United States District Court pursuant to the already mentioned laws passed by Congress some one hundred fifteen years ago, that permit state prisoners to attack their state court convictions in a United States District Court on constitutional grounds. 28 U.S.C. § 2241, *et seq.*

Following respondent warden's answer and the filing of a transcript of Samu-

el Gibson's trial and state habeas proceedings, petitioner Gibson's habeas application was referred to a United States Magistrate to submit proposed findings of fact and recommendations for disposition to this district judge in accordance with 28 U.S.C. § 636(b)(1). Proposed findings and recommendations having been submitted and the parties having filed their objections and comments, it is now this district judge's responsibility and duty to make his *de novo* determination of those portions of the proposed findings and recommendations to which objections were made. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B *en banc*), May 17, 1982. While petitioner objected to many of said proposed findings and recommendations and to the failure of the magistrate to address other claims, it is necessary to consider only [4] the claim of unconstitutional jury composition since that issue is dispositive of Samuel Gibson's petition for a writ of habeas corpus.

*The Facts*

Because the facts submitted by stipulation to the state trial judge include an agreed upon ± 5% possible error, this court requested the petitioner and respondent to supplement the record for the purpose of ascertaining the true facts as to the composition of these grand and petit or traverse jury lists without provision for a ± 5% error. As a result the respondent, relying upon an examination of the jury lists by the District Attorney of the Jones County Superior Court, has advised this court that there is no ascertainable error in the jury lists' identification by sex and race information originally furnished on May 1, 1975, to the Superior Court of Jones County. This court therefore finds that the 1975 grand and traverse jury lists were composed of the following total names, percent men and women, and percent white and black persons, and that comparing those percentages to the 1970 census of Jones County the percentage disparity is as shown:

### Grand Jury List

| Total | Men | Women | White | Black |
|---|---|---|---|---|
| 412 | 357 | 55 | 339 | 73 |
| % of Total | 86.70% | 13.30% | 82.30% | 17.70% |
| Census | 48.78% | 51.22% | 61.41% | 38.59% |
| Disparity | +37.92% | −37.92% | +20.89% | −20.89% |

### Trial or Traverse Jury List

| Total Known | Men | Women | White | Black |
|---|---|---|---|---|
| 1,475 | 1,186 | 289 | 1,207 | 268 |
| % of Total | 80.40% | 19.60% | 81.80% | 18.20% |

4. Even though the claim of unconstitutional jury composition is dispositive of this petition for a writ of habeas corpus, the court feels compelled to direct the parties' attention to one other issue which should be considered upon the retrial and resentencing of Samuel Gibson—the capital sentencing instructions at trial. It is well settled that the Eighth and Fourteenth Amendments require that capital sentencing instructions must "*clearly* guide a jury in its understanding of mitigating circumstances and their purpose, and the option to recommend a life sentence although aggravating circumstances are found . . . ." *Goodwin v. Balkcom,* 684 F.2d 794 (11th Cir. 1982) (emphasis added). *Accord, Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion); *Bell v. Ohio,* 438 U.S. 637, 98 S.Ct.

2977, 57 L.Ed.2d 1010 (1978) (plurality opinion); *Spivey v. Zant,* 661 F.2d 464 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *Chenault v. Stynchcombe,* 581 F.2d 444 (5th Cir. 1978).

It is the opinion of this court that the state trial judge's capital sentencing instructions to the jury did not satisfy the aforementioned requirement of the Eighth and Fourteenth Amendments. The state trial judge's instructions did not *clearly* and *explicitly* instruct the jury about mitigating circumstances (i.e., what a mitigating circumstance is and what its function is) and did not *clearly* and *explicitly* instruct the jury about the option to recommend against death even though aggravating circumstances are found.

| Total Known | Men | Women | White | Black |
|---|---|---|---|---|
| Census | 48.78% | 51.22% | 61.41% | 38.59% |
| Disparity | +31.62% | −31.62% | +20.39% | −20.39% |

---

### The Law

#### (A) Historically

On March 1, 1875, the Congress of the United States enacted the following law:

> "No citizen possessing all other qualifications which are or may be prescribed by law shall be disqualified for service as grand or petit juror in any court of the United States, of any State, on account of race, color or previous condition of servitude; and any officer or other person charged with any duty in the selection or summoning of jurors who shall exclude or fail to summon any citizen for the cause aforesaid, shall, on conviction thereof, be deemed guilty of a misdemeanor, and be fined not more than $5,000."

and on March 1, 1880, the Supreme Court of the United States in *Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676, found that law to be constitutional in every respect. Since 1880 it has thus unquestionably been the law of this land that the States of these United States are barred from discriminating on account of race in the selection of grand and/or petit (trial) juries. See *Cassell v. Texas,* 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950).

From 1880 until 1975—when Samuel Gibson was indicted and tried—the Supreme Court of the United States in subsequent decisions repeatedly reaffirmed that holding and reversed state criminal convictions in each instance in which discrimination in the selection of grand or petit jurors was shown. Some of those subsequent decisions were:

*Neal v. Delaware* (1881) 103 U.S. 370, 26 L.Ed. 567 (exclusion from both grand and petit juries); *Bush v. Kentucky* (1883) 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354 (exclusion from both grand and petit juries); *Smith v. Mississippi* (1896) 162 U.S. 592, 16 S.Ct. 900, 40 L.Ed. 1082 (exclusion from grand jury); *Carter v. Texas* (1900) 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839; *Tarrance v. Florida* (1903) 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (exclusion from both grand and petit juries); *Rogers v. Alabama* (1904) 192 U.S. 226, 24 S.Ct. 257, 48 L.Ed. 417 (exclusion from grand jury); *Martin v. Texas* (1906) 200 U.S. 316, 26 S.Ct. 338, 50 L.Ed. 497 (exclusion from both grand and petit juries); *Norris v. Alabama* (1935) 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (exclusion from both grand and petit juries); *Patterson v. Alabama* (1935) 294 U.S. 600, 55 S.Ct. 575, 79 L.Ed. 1082 (exclusion from both grand and petit juries); *Hollins v. Oklahoma* (1935) 295 U.S. 394, 79 L.Ed. 1500, 55 S.Ct. 784; *Hale v. Kentucky* (1938) 303 U.S. 613, 58 S.Ct. 753, 82 L.Ed. 1050 (exclusion from both grand and petit juries); *Pierre v. Louisiana* (1939) 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757 (exclusion from both grand and petit juries); *Smith v. Texas* (1940) 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (exclusion from grand jury); *Hill v. Texas* (1942) 316 U.S. 400, 86 L.Ed. 1559, 62 S.Ct. 1159 (exclusion from grand jury); *Patton v. Mississippi* (1947) 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76, 1 ALR2d 1286 (exclusion from both grand and petit juries). And see *Virginia v. Rives* (1880) 100 U.S. 313, 25 L.Ed. 667 (exclusion from grand and petit juries was unconstitutional); *Gibson v. Mississippi* (1896) 162 U.S. 565, 40 L.Ed. 1075, 16 S.Ct. 904 (exclusion from grand jury; rule recognized); *Thomas v. Texas* (1909) 212 U.S. 278, 29 S.Ct. 393, 53 L.Ed. 512

(exclusion from both grand and petit juries; rule recognized); *Akins v. Texas* (1945) 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692 (exclusion from grand jury; rule recognized); *Cassell v. Texas* (1950) 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (exclusion from grand jury; rule recognized).

### (B) *Applied to the Guilty*

That even those who are unquestionably guilty of serious crimes are constitutionally entitled to grand and petit (trial) juries selected in a non-discriminatory manner was made crystal clear by the Supreme Court in many cases, including in particular that of a defendant tried in the courts of this State—*Avery v. State of Georgia,* 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953). There the Supreme Court stated:

> "The Jury Commissioners, and the other officials responsible for the selection of this panel were under a constitutional duty to follow a procedure—'a course of conduct'—which would not 'operate to discriminate in the selection of jurors on racial grounds.' *Hill v. Texas,* 316 U.S. 400, 404, 86 L.Ed. 1559, 1562, 62 S.Ct. 1159 [1161] (1942). *If they failed in that duty, then this conviction must be reversed—no matter how strong the evidence of petitioner's guilt.* That is the law established by decisions of this Court spanning more than seventy years of interpretation of the meaning of 'equal protection.' " 345 U.S. at 561, 73 S.Ct. at 892, 97 L.Ed. at 1247 (emphasis added).

### (C) *Prima Facie Case*

 The defendant who constitutionally challenges the composition of a grand and/or petit (trial) jury list has the burden of producing evidence to prove his challenge. The quantity of evidence that the defendant must produce is called a *prima facie* evidentiary showing. The term *prima facie* evidence means:

> "Evidence good and sufficient on its face; such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient. Prima facie evidence is evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence." Black's Law Dictionary, 5th Edition, p. 1071.

When the defendant produces enough evidence to make a *prima facie* evidentiary showing of unconstitutional jury list composition, then the prosecution must produce evidence legally sufficient to disprove the *prima facie* case, failing which the defendant is then entitled to a judgment finding the jury list to have been unconstitutionally composed.

### (D) *Georgia Law and Supreme Court Cases from Georgia*

In 1968 the legislature of this State revised the statutory procedure—Code § 59–106—for the revision of Georgia jury lists so that as revised it stated:

> " '59–106. At least biennially, or, if the judge of the superior court shall direct, at least annually, on the first Monday in August, or within 60 days thereafter, the board of jury commissioners shall compile and maintain and revise a jury list of intelligent and upright citizens of the county to serve as jurors. In composing such list the commissioners *shall select a fairly representative cross-section of the intelligent and upright citizens of the county* from the official registered voters' list which was used in the last preceding general election. If at any time it appears to the jury commissioners that the jury list, so composed, is not *a fairly representative cross-section of the intelligent and upright citizens of the county,* they shall supplement such list by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of any significantly identifiable group in the county which may not be fairly representative thereon.

> " 'After selecting the citizens to serve as jurors, the jury commissioners shall

select from the jury list a sufficient number of the most experienced, intelligent and upright citizens, not exceeding two-fifths of the whole number, to serve as grand jurors. The entire number first selected, including those afterwards selected as grand jurors, shall constitute the body of traverse jurors for the county, except as otherwise provided herein, and no new names shall be added until those names originally selected have been completely exhausted, except when a name which has already been drawn for the same term as a grand juror shall also be drawn as a traverse juror, such name shall be returned to the box and another drawn in its stead.'" 1968 Ga. Laws, p. 533 (emphasis added).

In so doing Georgia statutorily recognized the decisions of the Supreme Court of the United States and of various courts of appeal of the United States and attempted to fashion a procedure for jury commissioners and superior court judges to comply with those decisions. Among the specific cases in which the "fair cross-section of the community" statutory language can be found is *Rabinowitz v. United States,* 366 F.2d 34, 57 (5th Cir. 1966) finding the jury box of this United States District Court to have been unlawfully compiled.

Available for this state trial judge's consideration were recent Supreme Court of the United States' opinions involving Georgia state court juries, to wit: *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (January 23, 1967)—jury list for Baker County, Georgia; *Jones v. Georgia,* 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (October 16, 1967)—jury list for Bibb County, Georgia; and *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (January 19, 1970)—jury list for Taliaferro County, Georgia; each of which clearly support the decision of the state trial judge that a *prima facie* showing was made by the stipulated facts indicating percentage disparity between the general population and the men and women, white and black persons on these jury lists.

Of particular significance was the following portion of the Supreme Court's opinion in *Whitus v. Georgia, supra,* 385 U.S. at 551, 87 S.Ct. at 647, 17 L.Ed.2d at 604:

"We believe that this proof constituted a prima facie case of purposeful discrimination. *While the commissioners testified that no one was included or rejected on the jury list because of race or color this has been held insufficient to overcome the prima facie case. Norris v. Alabama,* supra, 294 U.S. at 598, 79 L.Ed. at 1081 [55 S.Ct. at 583].

\*　　\*　　\*　　\*　　\*　　\*

"Nor does the fact that the commissioners selected prospective jurors on the basis of personal acquaintance correct the evil. See *Cassell v. Texas,* 339 U.S. 282, 289, 94 L.Ed. 839, 848, 70 S.Ct. 629 [633] (1950).

"Under such a system the opportunity for discrimination was present and we cannot say on this record that it was not resorted to by the commissioners. Indeed, the disparity between the percentage of Negroes on the tax digest (27.1%) and that of the grand jury venire (9.1%) and the petit jury venire (7.8%) strongly points to this conclusion. Although the system of selection used here had been specifically condemned by the Court of Appeals, the State offered no testimony as to why it was continued on retrial. The State offered no explanation for the disparity between the percentage of Negroes on the tax digest and those on the venires, although the digest must have included the names of large numbers of 'upright and intelligent' Negroes as the statutory qualification required. In any event the State failed to offer any testimony indicating that the 27.1% of Negroes on the tax digest were not fully qualified. The State, therefore, failed to meet the burden of rebutting the petitioners' prima facie case." (emphasis added).

Also instructive to the trial judge was the following portion of *Turner v. Fouche, supra,* 396 U.S. at 359, 90 S.Ct. at 539–40, 24 L.Ed.2d at 578 (emphasis added):

"The undisputed fact was that Negroes composed only 37% of the Taliaferro County citizens on the 304-member list from which the new grand jury was drawn. That figure contrasts sharply with the representation that their percentage (60%) of the general Taliaferro County population would have led them to obtain in a random selection. In the absence of a countervailing explanation by the appellees, we cannot say that the underrepresentation reflected in these figures is so insubstantial as to warrant no corrective action by a federal court charged with the responsibility of enforcing constitutional guarantees.

\* \* \* \* \* \*

"In sum, the appellants demonstrated a substantial disparity between the percentages of Negro residents in the county as a whole and of Negroes on the newly constituted jury list. They further demonstrated that the disparity originated, at least in part, at the one point in the selection process where the jury commissioners invoked their *subjective judgment* rather than objective criteria. The appellants thereby made out a prima facie case of jury discrimination, and the burden fell on the appellees to overcome it.

*"The testimony of the jury commissioners and the superior court judge that they included or excluded no one because of race did not suffice to overcome the appellants' prima facie case...."*

**(E)** *The Trial Judge's Ruling*

■ The trial judge at the conclusion of the evidence on jury composition produced by Samuel Gibson's attorney, in effect found that evidence to be sufficient to establish a *prima facie* case of unconstitutional jury composition. (Tr. p. 11). While no reference to particular decided cases was made, many decided cases, including those already mentioned, supported that ruling. Indeed, it is virtually impossible to find a Supreme Court of the United States or a United States Court of Appeals decision that would support a different ruling. This court therefore concurs in the trial court's ruling that the defendant made a *prima facie* showing of unconstitutional jury composition.

The burden of proof then shifted to the prosecution to prove that the jury lists were constitutionally composed and the trial judge, after hearing the testimony of the jury commissioners and *in spite of clear Supreme Court of the United States decisions to the contrary,* found that "both the Grand and the Traverse Jury is a representative cross-section of the citizens of Jones County...."

The jury lists that the trial judge approved of had the following percentage disparities:

| Population | White | Black | Men | Women |
|---|---|---|---|---|
| 1970 Census | 61.41% | 38.59% | 48.78% | 51.22% |
| Grand Jury List Disparity | +20.89% | −20.89% | +37.92% | −37.92% |
| Traverse Jury List Disparity | +20.39% | −20.39% | +31.62% | −31.62% |

The jury commissioners' testimony that race was not a factor but that many qualified persons whose names were and/or were not on the registered voters list were not included on the jury list was plainly inadequate to overcome the *prima facie* showing of discrimination against women and blacks.

The prosecution had enough evidence to convince any jury of any twelve citizens of Samuel Gibson's guilt beyond a reasonable doubt. Instead of proceeding "full steam ahead" to try this petitioner, the trial judge could have found these lists unconstitutionally composed and ordered the jury commissioners of Jones County to immediately revise these jury lists in accordance with Georgia law and Supreme Court of the United States decisions. That task could have been accomplished in sixty or less days

and this petitioner could have then been reindicted by and tried before a jury selected from a constitutionally composed jury list. The failure of the trial judge to do so now necessitates this United States District Court's reversal of Samuel Gibson's 1975 conviction. Some will call this decision "interference by a federal judge." Others will read the decision and say this results solely from decisions of the Supreme Court of the United States being ignored at the expense of the taxpayers of this State who must now pay the considerable expense of reindicting and retrying Samuel Gibson.

Samuel Gibson having been indicted in 1975 by a grand jury selected from an unconstitutionally composed grand jury list and tried before a trial jury selected from an unconstitutionally composed petit or trial jury list, is entitled to a judgment quashing that indictment, overturning or vacating the verdict and sentence, and requiring respondent within six months [5] to submit the charges to a constitutionally composed grand jury for reindictment and to afford the opportunity for a new jury trial, failing which the writ of habeas corpus requiring Samuel Gibson's discharge from custody must issue. Respondent shall keep the clerk apprised of the progress of the reindictment and retrial of petitioner.

SO ORDERED, this 24th day of September, 1982.

5. The Georgia statute of limitations on indictments for rape is seven years, Code § 26–502; when an indictment is found or returned within the seven-year period and then quashed, the limitation period is extended for six months. Code § 26–504.